## THIRD DEPARTMENT, SEPTEMBER, 1935.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. CONSOLIDATED WATER COMPANY OF UTICA, N. Y., Relator, *v.* MILO R. MALTBIE and Others, as Commissioners and Constituting the Public Service Commission, etc., of the State of New York, Respondents.

Rhodes, McNamee and Bliss, JJ., concur; Hill, P. J., dissents with an opinion in which Heffernan, J., concurs.

HILL, P. J. (dissenting). Review of a determination made by the Public Service Commission fixing rates which the Consolidated Water Company of Utica, N. Y., may charge consumers. The grounds for the determination are stated in an opinion comprising 123 pages of the case on appeal. This was prepared by two of the Commissioners and concurred in by a third, the other two Commissioners concurring in the result but not in the opinion. The value of the plant (rate base) was determined to be $5,850,000. Other items of property on the asset side of the account, like investments, etc., are about offset by liabilities other than the funded debt of $5,570,000 and the capital stock. The stock has a stated value of $3,000,000; and under the determination of the Commission represents only a $275,000 equity.

The Commission cites as its guide *Smyth* v. *Ames* (169 U. S. 466), and purports to follow the rule as to the fixing of valuation laid down in the opinion in that case (p. 547), and assumes to have found the fair value of the property by considering " the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute." The Consolidated Water Company of Utica, N. Y., the petitioner, was formed in 1899. It acquired the property of the Utica Water Works Company and the West Canada Water Works Company. On January 1, 1900, there was entered upon the books of the petitioner in the fixed capital account an item, " real estate, reservoirs, mains, etc., $4,280,666.64." There was issued and apparently transferred to the old owners as consideration for the assets received by the petitioner consisting largely of this item, $2,000,000 of bonds, 10,000 shares of preferred stock and 15,000 shares of common stock, each share being of the par value of $100. The value of the property then received by petitioner is fixed by the Commission at $1,301,888. This, added to cost of additions made by petitioner after 1900, amounting to $4,379,413 and depreciated nineteen per cent, represents the value of physical property upon which petitioner is allowed to earn a return under the decision of the Commission. There is added what seems a meagre allowance for working capital and going value

and further the petitioner is permitted to charge into operating expenses $28,000 a year for depreciation. In the item of cost of additions is included about $120,000, the amount paid by the petitioner for the plants of the New Hartford Water Company and the Whitestown Water Company. In October, 1929, the General Water Works and Electric Corporation (a holding company) purchased substantially all of the stock that had then been issued by the petitioner. It consisted of 120,000 shares of no par value class A stock and 30,000 shares of no par value class B stock. The owners of the stock had the option to accept $27.50 a share in money for the class A stock and $70 a share in money for the class B stock, or securities issued by the petitioner. At that time there was outstanding $5,492,000 of bonds and at the price quoted the class A stock was sold for $3,000,000 and the class B stock for $2,100,000. The amount paid for the stock, in the aggregate $5,100,000, is shrunk in the appraisal of the Commission in accordance with the following statement in the opinion: " We find a rate base of $5,850,000. Deducting $5,575,000 of bonds outstanding from the rate base, as found by us, the stockholders' equity in the rate base is $275,000."

The rate base fixed very closely corresponded with " original cost " as that term is used by the Commission. The majority opinion of the Commission states: " In determining original cost of property purchased by one utility from another utility, the actual cost to the installing company and not the amount paid by the purchasing company is the real measure of original cost. If the amount paid by the purchasing company were an important factor instead of original cost, rates would be determined by a mere change in ownership. Consider what the result would be if a property were sold several times at an increased price each time. The theory does not warrant serious consideration." The Supreme Court of the United States seems to believe that the theory does warrant serious consideration. " The actual cost of the property — the investment the owners have made — is a relevant fact. * * * But while cost must be considered the court has held that it is not an exclusive or final test. The public have not underwritten the investment. The property, on any admissible standard of present value, may be worth more or less than it actually cost. The time and circumstances of the outlay, and the effect of altered conditions demand consideration." (*Los Angeles Gas & Electric Corp.* v. *Railroad Commission*, 289 U. S. 287, 306.) The Commission seems to have adopted an incorrect and unconstitutional method of determining original cost.

The method which the Commission adopted to determine the reproduction cost new of the plant is likewise disclosed in its prevailing opinion. " Is it required that the appraiser shall reproduce structures which, while not definitely abandoned, are still practically obsolete? Is it required that the appraiser shall reproduce identical structures and materials which he knows could be better built of some other material or at some other location today? * * * It would seem that these questionable items should either be eliminated from the inventory or that present conditions should be taken into account in the value of the property. An example will serve to illustrate how materially and unjustly this interpretation of the reproduction cost theory affects value. Most of this property was built when pit-cast iron pipe, which is a very large item in the total value, was practically the only material available for distribution pipe systems. In recent years new

pipe manufacturing processes have been perfected, among them being the centrifugal process of casting pipe and the former method of calking lead joints has been very extensively superseded by joining compounds of various trade names which we may refer to generally as leadite, by which the expense of calking becomes unnecessary. * * * All the witnesses estimated the cost of reproducing the centrifugal pipe with leadite joints at from 9 to 17 per cent cheaper than pit-cast pipe with lead joints." Numerous other items of petitioner's property which are now being used were eliminated from the inventory upon the theory that modern and new structures or methods would be better. The evidence of the witness Sigretto as to reproduction cost apparently was adopted by the Commission. This evidence was in the form of a bid, not to construct a plant corresponding with the petitioner's plant, but one " just as good," using later-day methods. " There is to be ascertained the value of the plant used to give the service and not the estimated cost of a different plant. Save under exceptional circumstances, the court is not required to enter upon a comparison of the merits of different systems. Such an inquiry would lead to collateral issues and investigations having only remote bearing on the fact to be found, viz., the value of the property devoted to the service of the public." (*McCardle* v. *Indianapolis Water Co.*, 272 U. S. 400, 417.)

Depreciation was determined by the Commission under a formula, but there is evidence of facts from which the formula might be derived. The same is true as to the meagre allowance for working capital and for annual accretion of surplus for depreciation. I, therefore, am constrained to hold that as to depreciation and working capital there is competent proof. (Civ. Prac. Act, § 1304, subd. 4.)

It is the duty of the Appellate Division to determine " whether, in making the determination, any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the petitioner." (Civ. Prac. Act, § 1304, subd. 3.) The accepted rules of law as to original cost and as to evidence to be considered in determining the cost of reproduction new have been " violated to the prejudice of the petitioner." It is further the duty of this court to annul the determination and remit the matter to the Commission for further hearing if "upon all the evidence, there was such a preponderance of proof against the existence of any of those facts that the verdict of a jury, affirming the existence thereof, rendered in an action in the Supreme Court triable by a jury, would be set aside by the court as against the weight of evidence." (Civ. Prac. Act, § 1304, subd. 5.) There is a preponderance of competent proof against the existence of certain of the facts found.

I vote to annul the determination and to remit the matter to the Public Service Commission.

Heffernan, J., concurs.