In the Matter of BRONX GAS AND ELECTRIC COMPANY, Respondent, against MILO R. MALTBIE et al., Constituting the Public Service Commission of the State of New York, et al., Appellants.

In the Matter of the YONKERS ELECTRIC LIGHT AND POWER COMPANY, Respondent, against MILO R. MALTBIE et al., Constituting the Public Service Commission of the State of New York, et al., Appellants.

(Argued May 21, 1936; decided July 8, 1936.)

*M. Maldwin Fertig, John J. Donohue* and *Sherman C. Ward* for Public Service Commission, appellant.

*Paul Windels, Corporation Counsel (Joseph L. Weiner, Herman Horowitz* and *Harry Hertzoff* of counsel), for The City of New York, *amicus curiæ.*

*John J. Bennett, Jr.*, Attorney-General (*Timothy F. Cohan* and *Henry Epstein* of counsel), intervener.

*Harry Lesser* for United Civic Associations of the East Bronx, appellant.

*William L. Ransom, Colley E. Williams* and *Richard Joyce Smith* for respondents.

CRANE, Ch. J. These two cases have been argued together as they present the same question of law. While this opinion will consider the facts in the Bronx Gas and Electric Company case, the decision is applicable to both cases.

Petitioner, Bronx Gas and Electric Company, supplies both electric and gas service to consumers in the borough of the Bronx in the city of New York. This proceeding relates solely to the electric rates of that company. On May 2, 1934, the Public Service Commission, on its own motion, instituted the proceeding under review, wherein it undertook an investigation as to the rates and charges of the petitioner for electricity. The hearings for the taking of testimony were opened on May 9, 1934, and have continued up to the present time. On October 16, 1934, the Commission ordered the Bronx Company to put into effect, not later than November 1, 1934, temporary rates for electricity, pending a determination of final rates, which would reduce all rates in effect for metered electric service to general consumers by not less than twenty per cent. The Commission prepared a memorandum setting forth the facts upon which it based its temporary rates. It determined that the original cost of the physical property, less accrued depreciation, used by the petitioner in the rendition of electric service as of August 31, 1934, did not exceed $6,698,428; that a twenty per cent reduction in the rates for metered electricity to general consumers would reduce the company's annual operating income by $426,000; and that the amount the petitioner would receive under its rates so reduced would be sufficient to yield a return in excess of six per cent on the original cost.

The Yonkers Electric Light and Power Company proceeding was instituted October 11, 1932. Hearings began June 19, 1933, and have continued, so it is stated, as rapidly as possible. On May 9, 1934, the Corporation Counsel of Yonkers moved the Commission to fix temporary rates pursuant to section 114 of the Public Service Law (Cons. Laws, ch. 48), which was ordered October 23, 1934, the rates being reduced by an amount equal to six per cent of the charge then applicable under the provisions of its schedule of rates and charges. The Commission determined the original cost of the physical property, less accrued depreciation of the petitioner as of December 31, 1933, to be $14,373,000, estimated its net revenue for the year ending August 31, 1934, at $988,000, and allowed a return of slightly over six per cent on this value, amounting to $872,000. The estimated revenue which the petitioner was receiving under its then rates exceeded this amount by $116,000.

The Appellate Division annulled this action of the Public Service Commission on the ground that the fixing of the temporary or intermediate rate was illegal; and that section 114 of the Public Service Law, enacted by chapter 287 of the Laws of 1934, which permitted such procedure, was unconstitutional.

That the Commission in both of these proceedings has fairly complied with this new section of the law is conceded, so that the sole question for this court to determine is whether the Public Service Commission can legally provide a temporary rate for electric service, pending the determination of the final rate.

To sustain the ruling of the court below, reliance is placed upon *Prendergast* v. *New York Tel. Co.* (262 U. S. 43), in which Mr. Justice SANFORD wrote the opinion. Under the law as it then existed, the Commission of this State had fixed a temporary rate, pending final determination of the fair and reasonable rate. This was held to be confiscatory and the temporary injunction

issued by the United States District Court was upheld on appeal. Mr. Justice SANFORD in his opinion said: " Nor did the fact that the orders of the Commission merely prescribed temporary rates to be effective until its final determination, deprive the company of its right to relief at the hands of the court. The orders required the new reduced rates to be put into effect on a given date. They were final legislative acts as to the period during which they should remain in effect pending the final determination; and if the rates prescribed were confiscatory the Company would be deprived of a reasonable return upon its property during such period, without remedy, unless their enforcement should be enjoined. Upon a showing that such reduced rates were confiscatory the Company was entitled to have their enforcement enjoined pending the continuance and completion of the rate making process " (p. 49).

Certain things were established by this decision: (1) The temporary rate is confiscatory if it denies a fair return upon the Company's investment, that is, the temporary rate must give a fair return upon all those elements of capital value which must be considered in fixing the final rate. Of course this means that no temporary rate can ever be fixed, for, having all the elements upon which to fix a final rate, there is no necessity of calling it a temporary one. (2) The temporary rate, as fixed by the Commission in this *Prendergast* case, was a final rate, as the law had provided no means by which the company could be repaid its loss, should it finally be determined that the temporary rate was too low. (3) The court recognized that the public was entitled to a remedy and that the company could not profit through delays in legal procedure. It, therefore, recognized the practice of requiring the company, upon obtaining a preliminary injunction, to give a large bond, conditioned upon the repayment to consumers of the overcharges, if it should finally be determined that the Public Service Commission was right.

After this decision the Legislature of the State of New York was confronted with this *quære:* Was it ever possible to compel public service corporations to charge reasonable rates, pending the long drawn-out and interminable proceedings to establish a fair return? The establishment of the proper base rate, or the present capital investment, upon which a company is entitled to a fair return, has become an intricate, involved, tedious proceeding, extending into months and years. Much of the evidence produced is expert testimony, varying in worth and uncertainty, presenting a maze of detail and figures. (*City of Louisville* v. *Cumberland Tel. & Tel. Co.*, 225 U. S. 430.) Without suggesting in any way that the public service corporations have not acted with utmost good faith, we can see the opportunity, as did the Legislature, for the intentional delay in these proceedings whereby unwarranted profits may be obtained. The fixing of a reasonable rate by these public service corporations, who enjoy from the public such valuable franchises, to be of any value should be a matter of speedy regulation. The courts should not encourage such *finesse* in figuring as to make these hearings upon rate questions an obstruction instead of a relief. Of course caution must be used on both sides, for the desire for improper gain is oftentimes as eager with the consumer, or his spokesman, as with the corporation.

Recognizing the present-day conditions surrounding the difficulty in determining the proper rate, we come back to the question: Is it possible for the law, Legislature or Congress to provide for a temporary rate, pending these lengthy hearings? The Legislature evidently had in mind all that I have here said regarding the *Prendergast* case and the difficulties there pointed out when in 1934, by chapter 287 of the laws of that year, it added section 114 to the Public Service Law. This section reads:

" § 114. Temporary rates. To facilitate prompt action by the commission in proceedings involving the reasonableness of the rates of any public utility and to avoid

delay in any such rate proceeding, the commission is hereby authorized to require any public utility company to establish, provide and maintain continuing property records, including a list or inventory of all of the physical property actually used in the public service, and to require any public utility company to keep its books, accounts and records in such manner as to show currently the original cost of said physical property and the reserves accumulated to provide for the retirement or replacement of said physical property.

" The commission may, in any such proceeding, brought either on its own motion or upon complaint, upon notice and after hearing, if it be of opinion that the public interest so requires, immediately fix, determine and prescribe temporary rates to be charged by said utility company pending the final determination of said rate proceeding. Said temporary rates so fixed, determined and prescribed shall be sufficient to provide a return of not less than five per centum upon the original cost, less accrued depreciation, of the physical property of said public utility company used and useful in the public service, and if the duly verified reports of said utility company to the commission do not show the original cost, less accrued depreciation, of said property, the commission may estimate said cost less depreciation and fix, determine and prescribe rates as hereinbefore provided.

" Temporary rates so fixed, determined and prescribed under this section shall be effective until the rates to be charged, received and collected by said utility company shall finally have been fixed, determined and prescribed. The commission is hereby authorized in any proceeding in which temporary rates are fixed, determined and prescribed under this section, to consider the effect of such rates in fixing, determining and prescribing rates to be thereafter charged and collected by said public utility company on final determination of the rate proceeding."

We note at once that the temporary rate shall be suffi-

cient to provide a return of not less than five per centum upon the original cost, less accrued depreciation of the physical property of the utility company used and useful in the public service. At least there is some accuracy in these figures; they can be fixed with some certainty and are not dependent altogether upon speculative expert opinion. (*Clark's Ferry Bridge Co.* v. *Public Service Com.*, 291 U. S. 227.)

These are not all the factors, however, which must be taken into consideration in fixing finally a fair return or rate, or any rate for that matter, which has the effect of being final. According to *Smyth* v. *Ames* (169 U. S. 466) other elements must be considered in order to ascertain capital value — the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property, and the particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters of consideration and are to be given such weight as may be just and right in each case. Other elements besides these may enter into the problem, according to circumstances. (*West* v. *Chesapeake & Potomac Tel. Co.*, 295 U. S. 662.) Therefore, we must conclude, in fact it is apparent and conceded that if this temporary rate, fixed according to this added section, is to be final, or has any element of finality, it is unconstitutional and void.

We cannot imagine the Legislature, in the face of the *Prendergast* case, doing such a foolish thing as re-enacting, though in different language, a law giving the Public Service Commission power to do that which the United States Supreme Court had determined it could not do. The Legislature, evidently by section 114, intended to meet the criticism in the *Prendergast* case and to follow the way impliedly pointed out for a proper law. If the courts required the public utility company to put up a

bond to pay back to the consumers the overcharges which it had exacted, pending a hearing, why was it not just as feasible and legal to turn the remedy about and provide that the consumers or the public should make good to the company the loss which it may have sustained in temporarily exacting too little? This is what our Legislature has done, and this we think is the meaning which we must give to its language, if it is to have any sense at all in the light of the past.

The Commission fixes a temporary rate pending the hearing. It is based upon the elements stated, which are not all of those required to fix a permanent rate. As before stated, this would be impossible, if we must consider in fixing a temporary rate all the elements required for the final rate: no temporary rate could ever be fixed. This also is self evident. Therefore, to meet these conditions the temporary rate is fixed, within reasonable limits, upon figures which can be with some exactness obtained from the books of the company, showing original cost or investment; and if finally, when the proceeding ends, the temporary rate is proved to have been too low, the utility must be permitted and authorized to charge enough for its service to make up the loss. The consumer must pay what he should have paid, and the only way to do it is to fix a rate high enough to make up this loss.

True it is that all the consumers paying the final rate, including the take-up, may not be the same as those who paid the temporary rate. A few consumers may be new customers paying what the old consumer should have paid. Such instances are of minor importance; the percentage must be very small. We can never work our institutions of government if we refine matters to such an extent that we have to consider all these little details. The Constitution expresses fundamental principles, and if in the main these have been observed, this is all that can be required. Besides, when we speak of the consumer

— the customer — we mean the public, not individuals. (*San Diego Land & Town Co.* v. *Jasper*, 189 U. S. 439.)

Anyhow, this is no concern of the company, for its complaint here is that because of the temporary rate it will suffer loss. If the loss is made up to it in the final rate the objection is obviated. That the Commission is authorized, in fact compelled, to make up this loss, if any, through the fina rate, is the meaning and must be the meaning of these words in section 114: " The commission is hereby authorized in any proceeding in which temporary rates are fixed, * *, * to consider the effect of such rates in fixing, * * * rates * * * on final determination * * *." " Experience "— how much better this is than expert testimony, whether dealing in history or prophecy. (*Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19; *City of Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1; *Cedar Rapids Gas Light Co.* v. *Cedar Rapids*, 223 U. S. 655, 669.)

This section, as we have said, forces the Public Service Commission to consider the returns from the temporary rate and to establish the permanent rate, or the final rate, accordingly; that is, if the temporary rate has proved to be too low the final rate must make it up to the company. Over what time it is necessary to provide a rate sufficient to make up the loss, or to include the take-up, is a matter of adjustment, machinery and method. These matters are all in the hands of the Public Service Commission, which may increase or modify a rate to meet the circumstances at any time. Here is no *nunc pro tunc* rate as in *Oklahoma Natural Gas Co.* v. *Russell* (261 U. S. 290).

We, therefore, are of the opinion that this law is not unconstitutional; that it meets the defects in prior procedure, and affords the company ample protection as well as the consumer. It is a fair attempt to meet the time element, which is necessary to be considered in rate-fixing hearings.

Giving the respondents all the elements of value which they say should be considered, the companies then would have a return at the temporary rates, the Yonkers Company 4.89 per cent, and the Bronx Company 4.84 per cent.

For these reasons, in each proceeding the order of the Appellate Division should be reversed, and the determination of the Public Service Commission affirmed, with costs in all courts.

LEHMAN, O'BRIEN, CROUCH, LOUGHRAN and FINCH, JJ., concur; HUBBS, J., dissents.

Ordered accordingly.