In the Matter of CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent, against MILO R. MALTBIE et al., Constituting the Public Service Commission of the State of New York, et al., Appellants.

Argued November 30, 1949; decided December 29, 1949.

*Sherman C. Ward, George H. Kenny* and *Joseph J. Doran* for appellants. I. The amount of the company's reserve ·for depreciation had been fixed by the company in the unregulated exercise of managerial discretion and had never been approved by the commission as showing the accrued depreciation existing in the properties. (*People ex rel. New York Rys. Co.* v. *Public Service Comm.,* 223 N. Y. 373; *Matter of New York Edison Co.* v. *Maltbie,* 244 App. Div. 685, 271 N. Y. 103.) II. The commission was authorized by the statute to make its own estimate

of the accrued depreciation of the physical property, and was not required to accept the amount of the book reserve for depreciation as established by the company itself, in prescribing temporary rates. III. Section 114 is to be liberally construed in accord with its purpose of fostering the establishment of temporary rates in the public interest and as an aid in fixing proper final rates. (*Smyth* v. *Ames,* 169 U. S. 466; *Prendergast* v. *New York Tel. Co.,* 262 U. S. 43; *Matter of Bronx Gas & Elec. Co.* v. *Maltbie,* 271 N. Y. 364; *Matter of Yonkers Elec. Light & Power Co.* v. *Maltbie,* 245 App. Div. 419.) IV. Under the statute the books of the company are to afford the primary source of information, but not the exclusive base, for fixing temporary rates. (*Matter of Rochester Gas & Elec. Corp.* v. *Maltbie,* 273 App. Div. 114, 274 App. Div. 856, 298 N. Y. 867.) V. The " reserves accumulated " by the company and the " accrued depreciation of the physical property " are not synonymous and do not " refer to the same thing." (*Minnesota Rate Cases,* 230 U. S. 352; *Knoxville* v. *Knoxville Water Co.,* 212 U. S. 1; *Federal Power Comm.* v. *Hope Natural Gas Co.,* 320 U. S. 591; *People ex rel. Consolidated Water Co.* v. *Maltbie,* 245 App. Div. 866, 275 N. Y. 357, 303 U. S. 158; *Matter of Long Island Lighting Co.* v. *Maltbie,* 249 App. Div. 918; *Matter of Yonkers R. R. Co.* v. *Maltbie,* 251 App. Div. 204; *People ex rel. Binghamton Light, Heat & Power Co.* v. *Stevens,* 203 N. Y. 7.) VI. Ever since the enactment of the statute the commission has consistently construed its rate provisions as referring to the accrued depreciation existing in the properties. (*Matter of Yonkers Elec. Light & Power Co.* v. *Maltbie,* [1934] 1 P. S. C. 644, 245 App. Div. 419, 271 N. Y. 364; *Matter of Upstate Tel. Corp.* v. *Maltbie,* [1934] 1 P. S. C. 609, 154 Misc. 512, 243 App. Div. 848; *Matter of Bronx Gas & Elec. Co.* v. *Maltbie,* [1934] 1 P. S. C. 621, 246 App. Div. 657, 271 N. Y. 364.) VII. The commission did not err in determining to fix temporary rates after the hearings had been " closed ". (*Staten Island Edison Corp.* v. *Maltbie,* 267 App. Div. 72, 292 N. Y. 611; *Matter of Bronx Gas & Elec. Co.* v. *Maltbie,* 271 N. Y. 364; *Driscoll* v. *Edison Light & Power Co.,* 307 U. S. 104; *Matter of Consolidated Edison Co.* v. *Maltbie,* 299 N. Y. 172.) VIII. The commission did not err in respect to the manner of adopting its estimate of accrued

depreciation. (*O'Hehir* v. *Central New England Ry. Co.*, 152 App. Div. 677; *Staten Island Edison Corp.* v. *Maltbie*, 267 App. Div. 72, 292 N. Y. 611; *Matter of Bronx Gas & Elec. Co.* v. *Maltbie*, 271 N. Y. 364; *Matter of Grade Crossings of N. Y. C. R. R. Co. [Buffalo]*, 297 N. Y. 246; *United States* v. *Jones*, 336 U. S. 641; *Matter of Consolidated Edison Co.* v. *Maltbie*, 299 N. Y. 172.)

*John P. McGrath*, Corporation Counsel (*Andrew Bellanca* and *James J. Thornton* of counsel), for City of New York, *amicus curiæ*, in support of appellants' position. The requirement of section 114 of the Public Service Law that a hearing be held prior to the fixation of a temporary rate presupposes that there be a judicial determination of the true original cost less accrued depreciation of the property used in the public service, not an unverified acceptance of the company's book figures thereof. (*New Jersey R. R. & Transp. Co.* v. *Suydam*, 17 N. J. L. 25; *Twin Falls Salmon Riv. Land & Water Co.* v. *Caldwell*, 242 F. 177; *Coyle* v. *Commonwealth*, 104 Pa. 117; *Spalding* v. *Spalding*, 3 How. Prac. 297; *New York Tel. Co.* v. *Prendergast*, 300 F. 822; *Lindheimer* v. *Illinois Bell Tel. Co.*, 292 U. S. 151; *Southern Bell Tel. & Tel. Co.* v. *Railroad Comm.*, 5 F. 2d 77; *Pouch* v. *Prudential Ins. Co.*, 204 N. Y. 281.)

*Harry Lesser* for Cranford Taxpayers Association and others, *amici curiæ*, in support of appellants' position. The commission did make its own estimate of accrued depreciation. The temporary reduction in electric rates was fully justified upon the record.

*Jacob H. Goetz, James P. Hill, Richard Joyce Smith* and *Cameron F. MacRae* for respondent. I. The commission was not authorized by section 114 of the Public Service Law to base the temporary rate order upon its own estimate of original cost less accrued depreciation of the company's physical property, in substitution for the amount actually shown in the company's duly verified reports to the commission and books of account. (*Matter of Bronx Gas & Elec. Co.* v. *Maltbie*, 271 N. Y. 364; *Missouri ex rel. Southwestern Bell Tel. Co.* v. *Public Service Comm.*, 262 U. S. 276; *Smyth* v. *Ames*, 169 U. S. 466; *Matter of Village of Boonville* v. *Maltbie*, 272 N. Y. 40; *Matter of Upstate*

*Tel. Corp.* v. *Maltbie,* [1934] 1 P. S. C. 609, 154 Misc. 512, 243 App. Div. 848; *Matter of New York Edison Co.* v. *Maltbie,* 244 App. Div. 685, 271 N. Y. 103; *Matter of General Reinsurance Corp.* v. *Pink,* 269 N. Y. 347; *Lawrence Constr. Corp.* v. *State of New York,* 293 N. Y. 634.) II. Assuming that the question of depreciation presented issues of fact, the commission was bound to consider and weigh all of the relevant evidence given by the opposing witnesses, and its failure to do so amounted to a denial of due process of law to the company. (*Matter of New York State Guernsey Breeders Co-op.* v. *Noyes,* 284 N. Y. 197; *Morgan* v. *United States,* 298 U. S. 468; *Railroad Comm.* v. *Pacific Gas & Elec. Co.,* 302 U. S. 388; *New York Water Service Corp.* v. *Water Power & Control Comm.,* 283 N. Y. 23; *Mississippi Riv. Fuel Corp.* v. *Federal Power Comm.,* 163 F. 2d 433.) III. Section 114 of the Public Service Law, if construed to authorize the present action of the commission, is unconstitutional. (*Matter of Bronx Gas & Elec. Co.* v. *Maltbie,* 271 N. Y. 364; *Bluefield Water Works & Improvement Co.* v. *Public Service Comm.,* 262 U. S. 679; *Federal Power Comm.* v. *Hope Natural Gas Co.,* 320 U. S. 591; *Pennsylvania Power & Light Co.* v. *Public Service Comm.,* 19 P. U. R. [N. S.] 433, 193 A. 427 [Pa.]; *Driscoll* v. *Edison Light & Power Co.,* 307 U. S. 104.)

FULD, J. This appeal, taken as of right by the Public Service Commission, requires review of a nonunanimous order of the Appellate Division, Third Department, annulling an order of the commission which fixed temporary rates for electricity supplied by the Consolidated Edison Company of New York, Inc., within the City of New York. In fixing temporary rates, the commission purported to act under the authority of section 114 of the Public Service Law, and whether or not it acted in conformity with that statute, is the question presented in this article 78 proceeding.

Section 114, added to the Public Service Law in 1934 (L. 1934, ch. 287), reads as follows:

" To facilitate prompt action by the commission in proceedings involving the reasonableness of the rates of any public utility and to avoid delay in any such rate proceeding, the commission is hereby authorized to require any public utility company to establish, provide and maintain continuing property

records, including a list or inventory of all of the physical property actually used in the public service, and to require any public utility company to keep its books, accounts and records in such manner as to show currently the original cost of said physical property and the reserves accumulated to provide for the retirement or replacement of said physical property.

" The commission may, in any such proceeding, brought either on its own motion or upon complaint, upon notice and after hearing, if it be of opinion that the public interest so requires, immediately fix, determine and prescribe temporary rates to be charged by said utility company pending the final determination of said rate proceeding. Said temporary rates so fixed, determined and prescribed shall be sufficient to provide a return of not less than five per centum upon the original cost, less accrued depreciation, of the physical property of said public utility company used and useful in the public service, and if the duly verified reports of said utility company to the commission do not show the original cost, less accrued depreciation, of said property, the commission may estimate said cost less depreciation and fix, determine and prescribe rates as hereinbefore provided.

" Temporary rates so fixed, determined and prescribed under this section shall be effective until the rates to be charged, received and collected by said utility company shall finally have been fixed, determined and prescribed. The commission is hereby authorized in any proceeding in which temporary rates are fixed, determined and prescribed under this section, to consider the effect of such rates in fixing, determining and prescribing rates to be thereafter charged and collected by said public utility company on final determination of the rate proceeding."

In May of 1946, the commission, on its own motion, instituted an investigation into all of the rates charged by the Consolidated Edison Company. Hearings begun in June, 1946, continued from time to time over a two and a half year period, until December, 1948. On the last day of the actual hearing, the chairman of the commission, who was presiding, announced that the commission was considering the adoption of a temporary rate order. Over the company's protest, the commission on December 30, 1948, entered the order, here

under review, that there be a 10% reduction in the total charges made to every consumer for electric service in specified service classifications. The temporary rates, expressly made effective "until final rates are determined", were calculated to accomplish a gross reduction to customers of $21,500,000, which, after adjustment for reduced taxes, is equivalent to a reduction of $12,427,000 in the company's net income.

On a prior appeal recently before us, we held that, in view of the recoupment provisions of section 114, the alleged failure of the commission to follow the requirements of the statute did not warrant an injunction against the enforcement of its order pending appeal, and we accordingly reversed an order of the Appellate Division that granted a stay. (See *Matter of Consolidated Edison Co.* v. *Maltbie,* 299 N. Y. 172; see, also, *Matter of Bronx Gas & Elec. Co.* v. *Maltbie,* 271 N. Y. 364.) As a result of that decision, the temporary rates went into operation as of January 10, 1949, and, although the Appellate Division thereafter annulled the commission's order, they continue in effect down to the present through stays of that court's decision pending our review. As indicated, following consideration of the commission's determination on the merits, the Appellate Division concluded that the commission had failed to comply with those requirements of section 114 which prescribe the manner of fixing temporary rates.

The company's threshhold contention that, since the hearings on the rate investigation had been closed, the commission was *functus officio* and, by that token, without power to make a temporary rate order, requires but short answer. (And see *Matter of Consolidated Edison Co.* v. *Maltbie, supra,* 299 N. Y. 172.) The legislature made it exceedingly clear that the commission is authorized to fix temporary rates "pending * * * final determination" of a permanent rate proceeding if the commission be "of opinion that the public interest so requires" (§ 114, 2d par.). The time limitation implicit in the statute is that temporary rates can be imposed only after a permanent rate proceeding has been commenced and before its final determination. As the legislature undoubtedly appreciated, the facts which make possible a temporary rate order — or the considerations which point to its propriety — may not be adduced or brought to the commission's atten-

tion until the final stages of the proceeding, for such proceedings do not follow any set or prescribed course. And, beyond that, the legislature must also have realized, considerable time, even after the hearings are closed and the record made, may frequently be required for ultimate determination of the very complicated rate problem presented.

The principal contention advanced by the company is that the commission violated the mandate of the statute that the temporary rates be fixed and determined so as to yield a return of not less than 5% " upon the original cost, less accrued depreciation, of the physical property of said public utility company used and useful in the public service " (§ 114, 2d par.).

There is no question that the commission attempted to fix the rates in just the way described and, if the commission's method in ascertaining the amount of accrued depreciation be correct, there is also no question that the result complies with the requirements of the statute. In arriving at its result, the commission found the original cost of the property, as shown on the company's books, to be $813,000,000, from which it deducted $255,000,000, as representing accrued depreciation. This latter sum was made up of $160,000,000, which was the amount carried on the company's books as reserve for depreciation plus an additional sum of $95,000,000, which, an engineer employed by the commission testified, was the amount of the deficiency in that reserve. The inclusion of this additional sum is justified by the commission upon the ground that the books of the company " do not show " the amount of accrued depreciation and that, by reason thereof, the commission was authorized by the second paragraph of section 114 to proceed to make its own " estimate " of the accrued depreciation.

The Appellate Division held that the expression, " accrued depreciation ", used in that second paragraph of section 114, refers " to the same thing " as the expression, " the reserves accumulated to provide for the retirement or replacement of said physical property ", contained in the first paragraph; that the latter phrase relates to the amount actually carried by the company on its books for the purposes specified; and that, since the books did " show currently " the amount of such accumulated reserves — namely, $160,000,000 — the commission was

required to use that figure as the amount of "accrued depreciation" and could not undertake to make its own estimate.

In the literature of accounting, including public utility accounting, the term, "accrued depreciation", is by no means synonymous with the term, "reserves accumulated to provide for the retirement or replacement of * * * property." Phrased somewhat differently, the retirement reserve was — under the accounting practice followed generally by electric utility companies until recent years — designed primarily as a reserve for the equalization of retirements as required from time to time and was not intended to reflect or represent accrued depreciation. (See, e.g., *Matter of New York Edison Co.* v. *Maltbie,* 244 App. Div. 685, 691, affd. 271 N. Y. 103; see, also, National Association of Railroad and Utility Commissioners, *Report of Committee on Depreciation* [1943], pp. 4–7.) Certainly, in fixing permanent rates, the amount of accrued depreciation would have to be ascertained, and the reserves shown on the books, no matter how denominated, would not be controlling. (See, e.g., *People ex rel. Consolidated Water Co.* v. *Maltbie,* 275 N. Y. 357, 368–369, affg. 245 App. Div. 866; *Matter of Long Island Lighting Co.* v. *Maltbie,* 249 App. Div. 918; cf. *Federal Power Comm.* v. *Hope Natural Gas Co.,* 320 U. S. 591, 597–598, 606–607.)

It is strongly urged, however, that whatever these terms — accrued depreciation and reserves accumulated for retirement or replacement of property — may mean in other contexts, to draw a distinction between them in the present context would be to distort the legislative design. In making a temporary rate order, expedition and promptness and the ready availability of factual information are prime requisites. In other words, the argument runs, the legislature determined that, in computing temporary rates, reliance should be placed only upon the facts and figures readily disclosed by the company's books, since they had at least the virtue of definiteness in contrast to the uncertainty that would stem from the traditional use of speculative and varying expert opinion. (See *Matter of Bronx Gas & Elec. Co.* v. *Maltbie, supra,* 271 N. Y. 364, 372–373.)

These considerations are indeed weighty and may not be minimized. They would, in our view, be conclusive if the commission had the authority to require that the reserves

accumulated and shown on the books reflect correctly the accrued depreciation of the property. But we look in vain for such authorization. On the contrary, the commission has twice endeavored to prescribe the method of setting up depreciation reserves and twice have those attempts been held to be beyond the powers conferred upon the commission. (See *Matter of New York Edison Co.* v. *Maltbie, supra,* 271 N. Y. 103, affg. 244 App. Div. 685; *People ex rel. New York Rys. Co.* v. *Public Service Comm.,* 223 N. Y. 373; see, also, 1 Report of Commission on Revision of Public Service Commissions Law [1930], p. 128; cf. *Matter of Rochester Gas & Elec. Corp.* v. *Maltbie,* 298 N. Y. 867.) It is true that this court, in affirming the determination in the *New York Edison Company* case, pointed out that the commission could have elicited from the companies there involved the information sought " by directions of the Commission that would have been open to none of the objections to its present orders " (271 N. Y., at p. 112). The very objection that was there urged by the companies and upheld as valid by the court, however, was that the commission could not compel the companies to set up their reserves on the basis of such information.

The result, therefore, is that, although the commission is empowered to obtain the information as to the amount of accrued depreciation and to require that such information be preserved somewhere in the books and records of the company, the commission lacks the power to require the company to accumulate reserves in any amount other than as the company's own judgment dictates. The reserves accumulated, as " shown currently " on the books, pursuant to the first paragraph of section 114, would consequently continue to be the amount decided upon by the company in the exercise of its own unfettered judgment and not subject to correction by the commission.

It challenges reason to suppose that the legislature purposefully required that the commission accept willy-nilly the company's figures on depreciation regardless of how incorrect or inaccurate they might be. " If that were so ", as Presiding Justice FOSTER stated in the course of his dissenting opinion below, " a utility company could put any figures on its report to indicate accrued depreciation and the commission would be obliged to accept them. Obviously, this cannot have been the

legislative intent ". (275 App. Div. 475, 483.) While it may be impossible " completely to fathom the legislative mind " (*People ex rel. New York Central & H. R. R. R. Co.* v. *Public Service Comm.*, 227 N. Y. 248, 257), it is safe to venture that the legislature could not have intended that the commission be treated merely as a clerk making purely mathematical computations. (Cf. *United States* v. *Morgan*, 313 U. S. 409, 415.)

There is certainly nothing in either the express language or the general design of the statute which compels such a result. On the contrary, recognition can be given to the fact that the expressions in the two paragraphs — reserves accumulated and accrued depreciation — are obviously related without forcibly substituting the one for the other. Indeed, such substitution produces illogical and unintended consequences. For example, if the term, " accrued depreciation ", were substituted for the phrase in the first paragraph of section 114, " reserves accumulated to provide for the retirement or replacement " of property, the paragraph would authorize the commission to require utility companies to show currently on their books the accrued depreciation of their property, contrary to the decision in the *New York Edison Company* case (244 App. Div. 685, affd. 271 N. Y. 103). Similar consequences would follow if the phrase in the first paragraph were substituted for the term " accrued depreciation ", contained in the second paragraph. The relationship between the two terms is given effect if it be presumed, as would ordinarily be the case, that, for the purposes of a temporary rate order, the reserves accumulated for retirement or replacement, as shown on the books, represent the accrued depreciation specified in the second paragraph — for such reserves unquestionably constitute some evidence of accrued depreciation. But this presumption is not made conclusive.

In a case such as the present, where a witness for the commission has testified that the figure for accrued depreciation is $95,000,000 more than the reserve accumulated by the company on its books, and a witness for the company itself has indicated that the actual depreciation exceeded the book reserve by some $40,000,000, the commission need not blind itself to the fact that the reserve so accumulated upon the company's books does not — as reasonable men would use the word — " show " the accrued depreciation. The commission was authorized, there-

fore, to make an estimate of that item. In the light of the evidence adduced, it may not be said that its figure of $255,000,000 was without support. While other and variant figures were in the record, the courts will not and cannot assume that the commission failed to consider them in reaching its estimate, which concededly was not a final determination.

The construction which we have placed upon the statute impresses us as being more in accord with the legislative design, more reasonable and fair, than alternative interpretations. It gives full play to all of the statutory prescriptions and is consistent with all of its objectives. Expedition and promptness will be achieved, for reliance will continue to be placed upon the amount accumulated by the company rather than upon an estimate by the commission, except where the former is known to be misleading. In the latter case, substitution of a more accurate figure would seem to be demanded if meaning is to be given to the statutory direction that " the effect " of temporary rates is an element to be weighed and considered in determining permanent rates. (Public Service Law, § 114, 3d par.; see *Matter of Bronx Gas & Elec Co.* v. *Maltbie, supra,* 271 N. Y. 364, 375.) The value of experience under temporary rates is naturally increased in proportion to the correspondence between the rate base for such temporary rates and the base for permanent rates. And, finally, if a temporary rate order is made within the framework of section 114 — as it here was — the recoupment provisions of that section apply to prevent any injustice or prejudice to the company even if the temporary rate fixed is later found to have been placed at too low an amount. (See *Matter of Consolidated Edison Co.* v. *Maltbie, supra,* 299 N. Y. 172; *Matter of Bronx Gas & Elec. Co.* v. *Maltbie, supra,* 271 N. Y. 364.)

The order of the Appellate Division should be reversed and the determination of the Public Service Commission confirmed, with costs in this court and in the Appellate Division.

LOUGHRAN, Ch. J., LEWIS, DESMOND and BROMLEY, JJ., concur with FULD, J.; CONWAY and DYE, JJ., dissent and vote to affirm on the opinion of Justice SANTRY at the Appellate Division.

Order reversed, etc. [See 300 N. Y. 645.]