COMMON STOCKHOLDERS COMMITTEE OF LONG ISLAND LIGHTING CO. et al. v. SECURITIES & EXCHANGE COMMISSION et al.

No. 215, Docket 21641.

United States Court of Appeals Second Circuit.

Argued April 11, 1950.

Decided June 1, 1950.

On Petition for Modification July 5, 1950.

Writ of Certiorari Denied Oct. 9, 1950.

See 71 S.Ct. 64.

Harold G. Aron, Washington, D. C., Lynne A. Warren and Charles B. McGroddy, Jr., New York City, for appellant Common Stockholders Committee.

Graustein & Kormendi, New York City, Laszlo Kormendi, New York City, of counsel, for appellant Louis W. Gordon.

Maurice B. & Daniel N. Blumenthal, New York City, for certain individual stockholders, appellants.

Roger S. Foster, General Counsel, Harry G. Slater, Chief Counsel, Division of Public Utilities, Ellwood L. Englander and Solomon Freedman, Washington, D. C., for appellee Securities and Exchange Commission.

Charles G. Blakeslee, New York City, David K. Kadane and Charles E. Elbert, New York City, of counsel, special counsel for appellees Long Island Lighting Co., Queens Borough Gas & Electric Co., and Nassau & Suffolk Lighting Co.

Percival E. Jackson, New York City, Theodore N. Tarlau and Joseph J. Bryer, New York City, on the brief, for Long Island Lighting Co. 7% and 6% Preferred Stockholders Group, appellees.

Unger & Pollack, New York City, Milton Pollack and Richard F. Wolfson, New York City, of counsel, for appellee Committee of Preferred Stockholders of Long Island Lighting Co.

Before L. HAND, Chief Judge, and SWAN and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal from an order of the District Court, following its opinion of February 10, 1950, which directs enforcement of an amended plan filed under section 11(e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k(e), for the reorganization and consolidation of Long Island Lighting Company and its subsidiaries, Queens Borough Gas and Electric Company and Nassau & Suffolk Lighting Company. These are utility companies incorporated under the New York Transportation Corporations Law. They distribute electricity and gas in the counties of Nassau and Suffolk and the Borough of Queens. We shall refer to them as Long Island, Queens and Nassau. The plan as amended was approved by the Securities and Exchange Commission by its order of November 16, 1949.[1] The Commission forthwith applied to the District Court for an order of enforcement. After hearings at which all parties in interest were represented, the court found the plan fair and equitable and granted the requested order D.C., 89 F.Supp. 513. A committee for common stockholders of Long Island and several individual holders of such stock have appealed.

In brief the plan provides for the consolidation of Long Island, Queens and Nassau and for the issuance by the consolidated corporation of common no par stock which will be distributed in the following proportions: To Long Island preferred stockholders 76.98 per cent., to Queens preferred stockholders 11.51 per cent., to Nassau preferred stockholders 5.80 per cent., and to Long Island common stockholders 5.71 per cent. The outstanding debts of the constituent companies will remain unaffected. In making allocations of stock of the consolidated corporation the Commission estimated that its prospective total net income will be $3,500,000 per year, without giving effect to any savings from consolidation which the proponents of the plan estimate at $250,000 yearly after provision for federal income taxes. The substance of the appellants' objection to the plan is that Long Island common stockholders should receive a larger percentage and Long Island preferred stockholders a smaller percentage of the consolidated corporation's capital stock. Their specific attacks upon the actions of the Commission and the District Court will be discussed seriatim.

1. Jurisdiction of the Commission.

█ It is urged that the Commission has no jurisdiction over Long Island and

1. See Holding Company Act Release No. 9473 dated November 2, 1949.

its subsidiaries because their operations are wholly intrastate, and that application of the Act to them is violative of the constitutional provision reserving to the states powers not granted. A sufficient answer is that interstate distribution of Long Island's securities brings it and its subsidiaries within the coverage of the federal Act. The point is mentioned merely to show that it has not been overlooked. It is adequately dealt with in Judge Kennedy's opinion, with which the Court of Appeals of the District of Columbia has recently expressed agreement. Halsted v. Securities and Exchange Commission, 182 F.2d 660. Our own view as to the triviality of the constitutional argument appears in Public Service Com'n of New York v. Securities and Exchange Com'n, 2 Cir., 166 F.2d 784, 788.

### 2. Refusal to permit the Committee to solicit funds.

 It is contended that the Commission's refusal to allow the Committee to solicit from common stockholders five cents per share for expenses in opposing the plan so hindered their defense as to vitiate the hearings before the Commission. An appeal from the order of refusal was taken to the Court of Appeals of the District of Columbia where it has just been affirmed. Halsted et al. v. Securities and Exchange Com'n, supra. That decision is conclusive upon us as to the Commission's power to make the order. It does not, however, determine whether the effect of the order was such as to invalidate the hearings on the section 11(e) proceedings. As to this Judge Kennedy found nothing in the record to show that the Committee's representation of the common stock "was stifled, or was in any way weakened by the Commission's action." The Committee's claim of prejudice is chiefly based on the contention that lack of funds deprived it of an opportunity to submit evidence of reproduction costs. But reproduction cost is irrelevant except as it may indirectly bear on earning capacity.[2] So far as we are aware it has never been held under the Public Utility Holding Company Act that reproduction cost studies are essential; and the Commission says that in the only two cases where they were offered, they were rejected, and rejection of the evidence was not even urged as error although both plans were contested in the courts.[3] The claim of prejudice from the Commission's refusal to permit solicitation of funds is not substantiated.

### 3. Change of Circumstances.

 The earnings data in the record before the Commission do not go beyond March 31, 1949. The appellants argue that the record is already stale and that developments subsequent to the Commission's approval of the plan on November 17, 1949 require the proceedings to be resubmitted for further evidence. Thus, the actual consolidated net income for the year 1949 was $77,279 more than the $3,500,000 estimate of prospective yearly net income. But if the year ending February 28, 1950 be taken, the actual net income would be $51,146 less than the estimate. Such differences are negligible. Any estimate of prospective earnings is a forecast which cannot possess mathematical certainty. If every slight discrepancy between estimate and actuality requires that the hearings be reopened, the case would never end, for necessarily there is a time lag after the closing of the administrative record and before the plan can be administratively approved and judicially enforced. We do not say that unanticipated developments may never be sufficient to require reopen-

2. Consolidated Rock Products Co. v. DuBois, 312 U.S. 510, 526, 61 S.Ct. 675, 85 L.Ed. 982; Group of Institutional Investors v. Chicago, M. St. P. & P. R. Co., 318 U.S. 523, 539–541, 63 S.Ct. 727, 87 L.Ed. 959.

3. Southern Colorado Power Co., 14 S.E.C. 115, 116, plan enforced without opinion, and order affirmed *sub nom.* Disman v. Securities and Exchange Commission, 10 Cir., 147 F.2d 679, certiorari denied 325 U.S. 863, 65 S.Ct. 1200, 89 L.Ed. 1984; In re Jacksonville Gas Co., 11 S.E.C. 449, 460, plan enforced D.C.S.D.Fla., 46 F. Supp. 852.

ing, but certainly slight errors in the forecast of future earnings do not justify it.

The appellants also urge error in the Commission's refusal to grant petitions for reopening filed with it after the issuance of its findings and opinion. The Committee's petition was denied because it presented no matters of substance not already considered. Appellant Gordon's petition was denied without statement of reasons. He had purchased his stock after the administrative record was closed, and filed his petition while the enforcement proceedings were pending in the District Court. We see no abuse of discretion in the denial of either petition.

#### 4. Growth factors in the Long Island system.

Closely allied to the claim of changed circumstances, just discussed, are several contentions relating to growth factors in the future which the Commission is said to have understated or ignored, in making its estimate of future income.

First, it is said that the Commission did not take account of the system's large plan for future construction. This appears to be accurate. The Commission's estimate does not go beyond construction in progress or that for which working capital was available as of March 31, 1949. Appellants claim that this exclusion is erroneous because the expansion in physical plant will necessarily increase the rate base and therefore the system's future earnings. Conceding that the system may be allowed to earn a larger return in an expanded plant, it does not follow that increased future earnings would inure entirely, or at all, to the holders of present common stock. Their equity will be increased only if the cost of financing the construction program is low—a speculative prediction, at best. Even if new capital is available at low rates it is doubtful, as Judge Kennedy pointed out, whether the system's debt burden should be increased. Thus, if future financing takes the form of stock flotation, as seems probable, there is no great like-

lihood that the present common's equity will be increased. If, on the other hand, the system's debt structure is enlarged, common's equity will be increased, but so will its risk position. Either way, the possibilities of increased return for common arising out of new construction are too remote and speculative to require consideration in terms of the present value of the common stock.[4]

Two other contentions merit little discussion. Appellants urge that insufficient consideration has been given to increased earnings and reduction in operating expenses that will result from a growth in the use of natural gas and, at large, to the increased demand for the system's services that will result from the anticipated future development of the Long Island area. No contention is made that these factors were not considered. The Commission took much evidence on the subject of natural gas and went so far as to reject the testimony of one expert who did not give weight to that factor. Likewise, it received evidence—of a rather speculative nature—on the future of the Long Island area. We are not prepared to say that the consideration which the Commission gave to these factors was insufficient or that it resulted in an understatement of the share which present common stock should be allotted in the consolidated company.

#### 5. The 1944 Recapitalization.

Originally Long Island and its subsidiaries were granted an exemption from registration under the Act. This exemption was revoked on April 21, 1945 by an order of the Commission entered in a proceeding initiated by a committee of preferred stockholders on November 4, 1944. In the meantime, on December 16, 1944 Long Island filed with the Secretary of State of New York a certificate for reduction of capital stock whereby among other things, the par value of Long Island's preferred stock was to be reduced from $100 to $60 per share, the outstanding 3,000,000 shares of common stock were to be cancelled and 503,800

4. See In the Matter of Electric Power & Light Corp., Holding Company Act Release No. 8889, pp. 35–36, affirmed 2 Cir., 176 F.2d 687.

shares of new common were to be issued on the basis of one share for each share of preferred and one share for each twelve shares of old common. A dispute arose as to whether this plan of recapitalization ever became effective.[5] In approving the section 11 plan now before us the Commission took note of the dispute but did not determine whether the plan became effective. If it did, arrearages of dividends on the preferred stock could be paid off in 7.8 years, taking the Commission's estimate of future Long Island net yearly income as $2,815,000; if it did not, payment of the arrearages would take 14.5 years. The appellants do not assert that the recapitalization did become operative but they contend that the District Court erred in holding that the Commission was not required to determine whether or not it did.

■ There is no merit in this contention. On commencement of the revocation proceeding in November 1944 the jurisdiction of the Commission over Long Island attached. Any change in its capitalization thereafter was subject to review by the Commission and, even if effective under state law, could be disregarded by the Commission in a plan filed under section 11(e), since what is "fair and equitable" is a federal question.[6] The Commission considered both possibilities as to the recapitalization being effective or non-effective under state law; it recognized the conflicting claims. In making what it determined to be a fair and equitable allocation of stock between the preferred and common stockholders it obviously took these claims into account. We do not think it was required to decide the merits under state law of the conflicting claims, nor that the District Court was obliged to do so.[7]

### 6. Depreciation Reserves.

■ The appellants contend that no valid estimate of future earnings can be made until the existence and amount, if any, of deficiency in reserves for depreciation have been determined. In a memorandum of August 6, 1946 the state Public Service Commission found that the companies' reserves for depreciation were inadequate on a straight-line basis by an amount totalling when projected to March 31, 1949, $10,263,-969. Throughout the proceedings before the Commission the applicant companies stated their intention of eliminating the asserted deficiencies in their book reserves for depreciation by increasing the reserves with corresponding charges to earned surplus as a step in consolidation and recapitalization. Later, in oral argument counsel for the companies informed the Commission that they no longer intend, as formerly proposed, to increase the reserves for depreciation of the consolidated company but would place the amount of $10,263,969 in an account designated "unearned surplus—special" to be available for transfer to reserves for depreciation or for other charges which may be approved by appropriate regulatory authorities. On the basis of this change of position the appellants requested that the record be reopened to correct exhibits and testimony based on the assumption that said sum would be added to the reserves for depreciation. This motion was denied for reasons stated by the Commission which we think adequate. The appellants' argument seems to be that to

5. The Securities and Exchange Commission sought to restrain Long Island from carrying out the plan. A temporary injunction was denied, Securities and Exchange Commission v. Long Island Lighting Co., D.C., 59 F.Supp. 610 and the order was affirmed by this Court, Judge Clark dissenting, in 2 Cir., 148 F.2d 252, certiorari granted 324 U.S. 837, 65 S.Ct. 869, 89 L.Ed. 1401. Thereafter the certiorari was dismissed as moot, 325 U.S. 833, 65 S.Ct. 1085, 89 L.Ed. 1961, Long Island having registered under the Act on April 23, 1945. This Court in West India Fruit & Steamship Co.

v. Seatrain Lines, 2 Cir., 170 F.2d 775, 779, disapproved its former decision in the Long Island case. The New York Public Service Commission has stated that the 1944 plan did not become effective. In re Long Island Lighting Co., 73 P. U. R. (n. s.) 266, 271-2.

6. Schwabacher v. United States, 334 U.S. 182, 198, 68 S.Ct. 958, 92 L.Ed. 1305; Securities and Exchange Com'n v. Central-Illinois Securities Corp., 338 U.S. 96, 134, 69 S.Ct. 1377, 93 L.Ed. 1836.

7. See In re Electric Power & Light Corp., 2 Cir., 176 F.2d 687, 692.

estimate future earnings the Commission must determine what rate base the state Public Service Commission will allow, and to do this must ascertain the exact amount in the reserves for depreciation. But no finding which the Commission might make would bind the state regulatory body. In fixing a rate base the state Commission is free to determine the amount of depreciation actually existing in the properties without regard to what the books may show.[8] Considering that the state Commission had tentatively found a deficiency of $10,263,969 in the reserves for depreciation and that no one had proved the figure wrong, we see no impropriety in the Commission's acceptance of this figure without further independent inquiry in arriving at a rate base and rate of return for use in checking the accuracy of its estimate of future net income.

### 7. Consolidation Savings.

The final contention which requires consideration is that the Commission, in arriving at its estimate of future earnings, ignored the savings which would result from consolidated operation. The appellants assert that such savings will amount to approximately $250,000 per year. The Commission's stated reason for rejecting this item is that to add consolidation savings to its estimate of future earnings would "in effect, make it inure entirely to the benefit of the Long Island common stockholders." We are unable to follow this argument, and the Commission's brief makes no effort to explain it. We can see no reason why, if this is a legitimate item of future income, it cannot be allocated, first, between Long Island and the other companies and then, as to Long Island's share, between preferred and common. Thus, if the consolidated system's foreseeable income should be stated at $3,750,000 rather than $3,500,000 and 83.7% thereof were allocated to Long Island, it would receive 83.7% of the additionally foreseeable $250,000, or $209,250, and the apportionment between Long Island preferred and common would be based on an income of $3,024,000 rather than $2,815,000.

It is evident that this difference would materially affect the allocation. At the larger income, arrearages in preferred dividends would be paid up nearly two years sooner than the 14½ years estimated by the Commission on the assumption of no reduction in depreciation reserve. An earlier elimination of arrearages would, in turn, entitle Long Island common to a larger share vis-a-vis Long Island preferred.

■ If the Commission completely disregarded this $250,000 item, we think it was in error in so doing. We are, however, not entirely clear that it did so. While the Commission explicitly stated that it did not give any effect to consolidation savings in estimating future income, it may have considered the factor in making its allocation between Long Island common and preferred. Another possibility is that it considered the item as an offset against the losses which Long Island, during the period of its control, imposed upon Queens and Nassau. Such losses the Commission proposed to debit against Long Island common in its allocation. However, we cannot accept the exclusion of so substantial an item without an adequate explanation of the Commission's reasoning. See Securities and Exchange Com'n v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995.

It is therefore necessary to modify the order and remand the cause to the Commission upon the sole issue of consolidation savings. If the Commission did in fact have an unexpressed reason for excluding the item, or if it took the item into account in some unexplained manner it should so state. If it did not, it should recompute the percentage of new common to which Long Island common is entitled on the basis of an estimated future income for Long Island of $3,024,000 rather than $2,815,000. It is true that a remand on this issue may prove a futile gesture, since it may be that the Commission will come out with the same allocation supported by reasoning which the court will accept as adequate. But on the present record the allocation between pre-

8. Consolidated Edison Co. of New York v. Maltbie, 300 N.Y. 196, 90 N.E.2d 35, and cases cited therein at page 204.

ferred and common is not supportable. On the issue of consolidated savings the cause is remanded to the District Court with instructions to remand to the Commission. In all other respects the order of the court is affirmed.

On Petition for Modification

PER CURIAM.

In the division of our opinion dealing with the issue of Consolidation Savings we directed a remand to the Commission, saying: "If the Commission did in fact have an unexpressed reason for excluding the item, or if it took the item into account in some unexplained manner it should so state. If it did not, it should recompute the percentage of new common to which Long Island common is entitled on the basis of an estimated future income for Long Island of $3,024,000 rather than $2,815,000." Shortly after the opinion was filed and before our mandate had been issued, at the request of the proponent companies and upon representations concerning the hardship which will result from unnecessary delay in consummating a plan, the Commission presented to this court Supplemental Findings and Opinion, accompanied by a petition that they be accepted as a response to the court's questions and that the order of the District Court be affirmed. The appellants were given leave by us to reply to the Commission's petition and have done so.

The Supplemental Opinion of the Commission states that it did not ignore the item of consolidated savings but disregarded it for two reasons: first because it was not clear how far, if at all, the Public Service Commission would allow the new company to profit by consolidated savings, and second that the Commission had taken it into account by reckoning that in bad years the new company might not be able without it to earn the full amount of the rates allowed. If these reasons are an adequate explanation no new hearing would seem to be necessary. The situation was that we did not understand the Commission's original reasoning and therefore we could not dispose of the appeal. They have now told what their reasons were. That requires us to decide whether the effect they gave to consolidated savings was right. But this cannot be an issue requiring a new hearing by the Commission any more than a new hearing would be required before a district judge if we asked the judge to say what findings of fact he had acted on but had not expressed in his opinion.

Coming to the merits of the Commission's treatment of consolidated savings in the light of its supplemental opinion, we think the explanation adequate. What the future earnings of any company will be is largely guess work. When to the uncertainties inevitable in such a prediction there is added the uncertainty of forecasting how much of the predicted earning the Public Service Commission will allow the consolidated company to keep, the guess becomes even less prophetic. Now that the Commission has shown that it has made at least a rational guess about the expectable influence of this factor, we see no basis for us to say that the Commission is necessarily wrong. The doubts which the first report left in our minds are satisfied by the supplemental report.

Talk by the appellants of lack of due process seems baseless. By replying to the petition they have had their opportunity to convince us either that the Commission did not use the item at all in their computations or that the use they did make of it was not permissible.

Our former opinion is modified, and the order of the District Court is affirmed.