**Petition of BLATCHLEY.**

**No. 4201.**

Circuit Court of Appeals, First Circuit.

Oct. 29, 1946.

Rehearing Denied Dec. 18, 1946.

See also 157 F.2d 901, 898, 900.

Thurman Arnold, of Washington, D. C. (Harry E. Burroughs, of Boston, Mass., of counsel), for Harry C. Blatchley, petitioner.

Roger S. Foster, of Philadelphia, Pa., for S.E.C.

Leonard A. Pierce, of Portland, Me., Everett H. Maxcy, of Augusta, Me., and Charles A. Coolidge, of Boston, Mass., for New England Public Service Co.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

PER CURIAM.

This is an application by Harry C. Blatchley for leave to file a petition for a writ of mandamus to be directed to the Honorable John A. Peters, Judge of the United States District Court for the District of Maine. On September 11, 1946, the matter was presented to us orally by counsel for petitioner in conjunction with a hearing on sundry motions and applications in related cases, all growing out of a certain proceeding initiated by the Securities and Exchange Commission under § 11(b) of the Public Utility Holding Company Act of 1935, 49 Stat. 803, 15 U.S.C.A. § 79k(b), in which proceeding New England Public Service Company ("NEPSCO"), a registered holding company, was one of the respondents. Blatchley is a stockholder of record of 30 shares of NEPSCO's prior lien preferred cumulative stock.

In the administrative proceeding just referred to, NEPSCO submitted to the Commission, pursuant to § 11(e) of the Act, a proposed plan of reorganization for the purpose of complying with the requirements of § 11(b). The plan in its finally amended form contemplated the sale by NEPSCO of its holdings in various non-utility subsidiary companies to a syndicate composed of the First Boston

Corporation and Coffin & Burr Incorporated, for the sum of $16,500,000.

After extensive hearings, the Commission, on October 11, 1945, issued its findings of fact, opinion, and order approving the amended plan. It found that the proposed sale of the non-utility properties was necessary or appropriate to effectuate the provisions of § 11(b) of the Act and that its terms were fair and equitable to the persons affected thereby. In its opinion, the Commission stressed the fact "that representatives of holders of all classes of NEPSCO stock have joined in asking us to approve the plan and that no representatives of security holders now affirmatively oppose it." Blatchley did not appear in the proceedings before the Commission.

In the Commission's order of October 11, 1945, the plan was approved subject to the condition "that this order shall not become operative to authorize the consummation of the plan until an appropriate District Court shall have entered an order enforcing the plan." In compliance with a request duly filed by NEPSCO, the Commission, on October 15, 1945, filed in the United States District Court for the District of Maine its application for an order enforcing and carrying into execution the provisions of the plan, in accordance with §§ 11(e) and 18(f) of the Act, 15 U.S.C.A. §§ 79k(e), 79r(f).

On October 25, 1945, the district court held a hearing on the Commission's application. All the representatives present of various stockholder groups expressed their approval of the plan.

The only opposition to the plan was voiced on behalf of Allen L. Goldfine, whose counsel arose at the hearing and stated that Goldfine and a group associated with him had been in communication with officers of NEPSCO in July, 1945, with a view to submitting a bid for the properties to be sold; that had he been permitted or invited to bid, Goldfine would have put in a bid substantially higher than the figure of $16,500,000; and that Goldfine was at that time willing to bid $17,500,000 for the properties. Goldfine did not assert any interest in the proceeding other than as a would-be bidder. He had not participated in the § 11(b) proceeding before the Commission which culminated in the order approving the plan, though he does claim to have been in touch with representatives of the Commission while the proceeding was pending and to have received from them no encouragement of his desire to offer a bid. He made no formal request to be admitted as a party to the court proceeding. The district court refused to take any action in connection with the statement of counsel for Goldfine except to order it placed in the record.

Upon the conclusion of the hearing, and on the same day, October 25, 1945, the district court entered its order enforcing the plan. The court adopted the findings of fact and conclusions of law of the Commission; approved the plan as fair and equitable and as appropriate to effectuate the provisions of § 11 of the Act; took exclusive jurisdiction of NEPSCO and its assets wherever located for the purpose of carrying out the provisions of the plan; and directed NEPSCO through its officers to consummate the plan as soon as practicable on and after October 25, 1945. Included also in the district court's order was the following injunction:

"All creditors and stockholders of New England Public Service Company and all other persons are hereby enjoined and restrained from doing any act or taking any action interfering with, or tending to interfere with, these proceedings, or with the carrying out of the plan or any part thereof, including the commencement or prosecution of any action, suit or proceeding at law or in equity, or under any statute in any Court, or before any executive or administrative officer, commission or tribunal, other than such proceedings before the Commission or this Court or the Circuit Court of Appeals as may be appropriate under the Act or the rules and regulations promulgated thereunder."

Blatchley had not appeared at the hearing before the district court, nor had he in any other way indicated to the court any objection to the plan prior to the entry of the above order by the court enforcing the plan.

No stay or supersedeas of the district court's order of October 25, 1945, having been applied for, NEPSCO proceeded promptly to consummate the plan. It appears that NEPSCO's holdings in its non-utility subsidiary companies were sold to the purchasing syndicate for $16,500,000 cash on or about October 30, 1945, that subsequently there were further transfers to persons not involved in the proceedings, and that a consolidation was had of certain of the properties and a public offering and sale of securities of successor or surviving corporations.

Thereafter, on December 10, 1945, Blatchley filed in this court a petition under § 24 (a) of the Public Utility Holding Company Act, 15 U.S.C.A. § 79x(a), asking us to review the Commission's order of October 11, 1945, approving the plan. On the same day Goldfine filed in this court a similar petition. We have dismissed these petitions for review in Blatchley v. Securities & Exchange Com'n et al., 157 F.2d 898, and Goldfine v. Securities & Exchange Com'n et al., 157 F.2d 899.

On January 21, 1946, Blatchley filed a notice of appeal from the district court's order of October 25, 1945, enforcing the plan. On the same day Goldfine filed a similar notice of appeal. We have dismissed these appeals in Blatchley v. Securities & Exchange Com'n et al., 157 F.2d 900, and Goldfine v. Securities & Exchange Com'n et al., 157 F.2d 900.

On June 13, 1946, Blatchley filed in the district court a petition for leave to file a petition in the nature of a bill of review, and a petition in the nature of a bill of review. The bill of review alleged that the Commission's and the district court's approval of the plan for the sale of NEPSCO's non-utility properties had been obtained by fraud and concealment of material facts; that a conspiracy existed to sell the properties to an inside group at a grossly inadequate price; that various officers and directors of NEPSCO participated in and benefited by the sale of the assets to the purchasing syndicate in violation of their fiduciary responsibility; and that, in order to effectuate the sale, bidding was chilled and no bona fide effort was made to secure the best possible terms for the security holders of NEPSCO. The bill prayed that the district court's order of October 25, 1945, be vacated and a new trial ordered by reason of newly discovered evidence indicating fraud upon the Commission and the court.

The bill of review and petition for leave to file the same came on for hearing before the district court on July 10, 1946. The Commission filed a cross-motion, in which Blatchley orally joined, asking that the district court:

"(1) remit to it for preliminary consideration at a hearing before the Commission the petition by Harry C. Blatchley in the nature of a bill of review and the petition for leave to file the same;

"(2) that the Commission be authorized, insofar as authority of this Court is necessary therefor, to inquire into the new matters therein alleged and as to whether there are any other new matters making it fair and equitable that there be a modification of the order of the Commission dated October 11, 1945 and the order of this court dated October 25, 1945;

"(3) that the Commission be authorized to modify or supplement its findings as to the facts in respect of the plan which accompanied the Commission's order of October 11, 1945 by reason of such additional evidence as may be adduced at said hearing before the Commission and;

"(4) that the Commission be authorized to file with this Court its modified or new findings and its recommendation, if any, for the modification or setting aside of its original order and the original order of this Court."

In support of its cross-motion, the Commission urged that, since the enforcing court, under § 11(e), acts in review of the prior administrative proceeding in determining whether to approve a plan as fair, equitable and appropriate, and does so on the basis of the record before the administrative agency, the orderly course of relations between court and administrative agencies would seem to imply that charges of fraud or misconduct or any other proper grounds for adducing additional evidence should be inquired into, in the first

instance, before the Commission. The procedure specified in § 24(a) of the Act was referred to by way of analogy as indicative of, or declaratory of, the proper relationship between reviewing court and administrative agency.

Upon conclusion of the hearing, the district court, on July 10, 1946, orally denied the motion for remand to the Securities and Exchange Commission, without prejudice, however, to any action the Commission might see fit to take in connection with any matters referred to in the said cross-motion.[1]

The Commission did not undertake to appeal from the district court's order denying its cross-motion. However, it proceeded to make its own investigation of the charges of fraud. In a notice and order for public hearing dated July 23, 1946, the Commission stated that it deemed it necessary and appropriate that a public investigation and hearing be held for the taking of evidence as to the facts, conditions, practices and matters surrounding and incidental to the plan of reorganization in question "for the purpose of determining what position the Commission shall take with respect to said petition in the nature of a bill of review and in said appellate proceedings and, generally, to aid in the enforcement of the provisions of the Public Utility Holding Company Act of 1935 and in the prescribing of rules and regulations thereunder". Such hearing has been held but the Commission has issued no findings.

On August 8, 1946, Blatchley filed a notice of appeal from the district court's order of July 10, 1946, denying the motion to remit the bill of review to the Commission for hearing thereon. We have dismissed this appeal in Blatchley v. Securities & Exchange Com'n et al., 157 F.2d 901.

On September 11, 1946, Blatchley filed in this court the pending petition for leave to file a petition for a writ of mandamus directed to the district judge ordering him to remit the bill of review to the Commission for the taking of testimony and the making of such recommendations and modifications of the Commission's findings of October 11, 1945, as seem appropriate.

In the foregoing simplified statement of a somewhat tangled procedural situation, we fail to discover any present occasion for the issuance of a writ of mandamus.

If, upon hearing in a district court on an application by the Commission under § 11(e) for enforcement of a plan, it should become necessary or appropriate to take additional testimony not offered in the prior proceeding before the Commission, it may be that the proper procedure would be for the district court to order the additional testimony to be taken before the Commission, with a view to further findings by the Commission and a possible modification of the Commission's order. We need express no opinion on that, for in the case at bar we have quite a different situation.

Here, on the basis of the Commission's findings and order, the district court has already approved the plan and it has been fully carried out pursuant to the court order. Whatever may have been their original view, Blatchley and the Commission have conceded before us that it is now too late to undo the consummated plan to the prejudice of innocent third parties. The district court's order enforcing the plan cannot now be undermined by modification of the Commission's findings upon which the court's order was based.

Blatchley desires ultimately to secure the appointment of a trustee to prosecute causes of action arising out of the sale, and to obtain an accounting from the alleged wrongdoers, on behalf of NEPSCO and its security holders. As stated by counsel for Blatchley at the oral argument, the only legal relief which Blatchley now seeks is modification of the injunction contained in the district court's order of October 25, 1945, so as to permit suits against the wrongdoers; but he seems to be under the impression that to obtain such modification of the injunction it is necessary first to have a hearing by the Commission on the charges of fraud and findings by the Commission thereon. However, that in-

---

[1] This verbal denial of the motion was later embodied in a formal order entered August 8, 1946.

junction, while customary and appropriate in court orders of this type under § 11(e), is not prescribed by the Act, and its terms are within the discretion and control of the district court as a court of equity.

It is not at all clear to us that the injunction in its present terms would forbid the commencement or prosecution of the sort of suits which Blatchley has in mind. However that may be, Blatchley has not yet asked the district court for either a clarification or modification of its injunction. If the injunction in its present form does forbid the institution of stockholders' suits seeking an accounting from the alleged wrongdoers, the district court is at liberty to make an appropriate modification of the injunction. We think it may do so without a final adjudication, either by it or by the Commission, of the merits of the allegations of fraud. In the regular course, the merits of those charges would be tried out in the court or courts in which the subsequent suits against the alleged wrongdoers may be brought. We find nothing in the Act or in the accepted principles governing the relationship between reviewing courts and administrative agencies which would make it the mandatory duty of the district court to remit the bill of review to the Commission for hearing thereon at this time.

Without, therefore, considering other possible objections to the issuance of a writ of mandamus in the circumstances presented, we think it clear that Blatchley's petition for leave to file a petition for writ of mandamus must be denied.