BURBROOKE MANUFACTURING Co., INC., Respondent, *v.* ST. GEORGE TEXTILE CORPORATION et al., Appellants.

First Department, April 13, 1954.

*Milton Haselkorn* of counsel (*Edward C. Wallace* with him on the brief; *Weil, Gotshal & Manges,* attorneys), for appellants.

*Jack Klaw* for respondent.

BREITEL, J. Involved in this case is the question whether an action may be brought for fraud based upon the initiation of an arbitration proceeding and the use therein of fictitious writings and false testimony, such arbitration having resulted in an award in favor of the corporate defendant.

It is an ancient law that an action does not lie for perjury, subornation of perjury or the use of false documents in an action or proceeding which determined the issues arising from such perjury and documents. Distinction has been made, however, where an independent, sometimes referred to as an extrinsic, fraud has been practiced, and when only as an incident thereof was there use of the instruments of the fraud in the prior proceeding or action to advance or to consummate the fraudulent scheme. The distinction is based upon the principle that a fraudulent scheme which is greater in scope than the issues that were determined in the action or proceeding may become the basis of an action. This is so, although some of the issues had been determined adversely to the plaintiff in a prior action or proceeding to which, normally, the doctrine of *res judicata* would apply. In applying the distinction the test is not merely whether the fraudulent scheme antedated the bringing of the action or the hearing in which the prior judgment was rendered. (*Verplanck* v. *Van Buren,* 76 N. Y. 247; *Ross* v. *Preston,* 292 N. Y. 433; *Young* v. *Leach,* 27 App. Div. 293; *Anchor Wire Corp.* v. *Borst,* 277 App. Div. 728; accord: *Byrnes* v. *Owen,* 243 N. Y. 211, 217, 139 A. L. R. 469, 470.)

In *Verplanck* v. *Van Buren* (*supra*), there was involved a fraudulent scheme in connection with brick manufacture in the course of which fraudulent accounts were kept and fictitious contracts concocted. While these false documents were used in the prior action the judgment was not held to debar a further action based upon the fraud because the scheme was of larger scope than merely the fraudulent proof that was offered upon the trial in the prior action. Said the court: " Nor does the fact that the combination and fraud was brought to a successful end, by the false testimony produced upon the trial, make the case obnoxious to the rule that there can be no civil action for perjury or subornation of perjury. The false testimony is not the sole moving factor in the cause of action. The fraudulent purpose or intent, formed before the accounting and trial, the fraudulent concoction of the unreal contracts with Kendall, and the false entries in the books of account, are the chief bases of the cause of action. The acts of the defendants upon the trial are but a part of an entire transaction." (Pp. 260–261.) The last sentence is the one that expresses the test.

The case of *Young* v. *Leach* (*supra*), is to the same effect, although in this instance the second action was held barred. This was so, although from the pleading it was evident that the

plan to defraud antedated in time the bringing of a second action. The complaint was held insufficient, however, because its allegations related only to the perjury and the subornation of perjury that occurred upon the trial. Making the distinction more clearly is the case of *Ross* v. *Preston* (292 N. Y. 433, *supra*), in which it was alleged that the defendant fraudulently induced the plaintiff to withdraw his objections to probate of a will. The action was held not to lie because there was no fraud outside of the probate proceeding. In referring to the *Verplanck* case (76 N. Y. 247) and another, the court said: "In those cases the fraud consisted of fraudulent ' concoction ' of fictitious contracts; of ' false entries in books,' of false statements by a banker that bonds were stolen while in its possession though, in fact, they were converted by the banker. In each case these were the ' chief bases of the cause of action.' The entry of judgment merely was an incident of the frauds which had been perpetrated outside of the former actions and the reason why the judgment settling the accounts did not preclude proof of the antecedent fraud is that the trial and judgment was only a step in the consummation of the antecedent fraud " (p. 437). The test was stated to be whether there was "fraud outside of the probate proceeding " or whether the fraud "was only a step in the consummation of the antecedent fraud " (p. 437).

Very recently the problem was raised in this court, and the late Mr. Justice SHIENTAG very precisely developed the distinction (*Anchor Wire Corp* v. *Borst,* 277 App. Div. 728, *supra*). Referring to the *Verplanck* case (*supra*), the court wrote (pp. 729–730): "The Court of Appeals reiterated the rule that no cause of action will lie for perjury or subornation of perjury. The case was distinguished, however, in that there was an actionable fraud over and beyond the false testimony. It was held immaterial that the fraud was brought to a successful conclusion by the false testimony, since the false testimony ' is not the sole moving factor in the cause of action.' The fraudulent purpose, formed before the accounting and the trial, formed the chief basis of the cause of action. The acts of the defendants upon the trial were but a part of the entire transaction. The complaint in the instant case, however, cannot fairly be read to state a cause of action for a fraud over and beyond the false testimony. *To state a good cause of action, plaintiff must plead circumstances showing more than a conspiracy to commit perjury, and that plaintiff has not done.* Such circumstances may exist in this case, for example, if any misrepresentations had

been made to plaintiff as to the applicable emergency rent at the time that it first occupied the premises.'' (Emphasis supplied.) (Compare the parallel rule in equity in setting aside judgments obtained by fraud and perjury. 88 A. L. R. 1201 *et seq.*; 3 Freeman on Judgments [1925 ed.], § 1233; Restatement, Judgments, § 126; *Arcuri* v. *Arcuri,* 265 N. Y. 358; *Aparicio* v. *New England Equitable Ins. Co.,* 177 App. Div. 551, affd. 221 N. Y. 629.)

The complaint in this case contains extensive allegations of a plan to give false testimony and present fictitious contracts in the arbitration proceeding in which the award was rendered in favor of the corporate defendant. Upon a motion to dismiss the complaint for legal insufficiency, all the allegations of the pleading attacked, serious as they may be, must be deemed true. The entire conspiracy is described as one to initiate the arbitration proceeding and the preparation of the documents and the false testimony to be used in evidence for the purpose of accomplishing the fraudulent scheme. While it is alleged that the fraudulent preparation was done chronologically in advance of the arbitration proceeding it is not alleged expressly or by implication that the scheme was one to defraud plaintiff independently and extrinsic to the arbitration. It may well be that such was the case. Indeed, it is likely that such was the case, for the alleged scheme was one to deceive plaintiff that the corporate defendant, a seller, had procured the ordered merchandise from overseas, when in fact it had not, and that when plaintiff failed to accept the delivery, the corporate defendant was required to sell the merchandise, at a loss, to another, when in fact it had not done so. It may well be that plaintiff is in a position to allege and prove that this scheme and its implementation was designed to mulct plaintiff unjustly of funds and that the arbitration was merely a step to consummate the fraud when plaintiff refused to pay the allegedly fictitious damages that the corporate defendant suffered as a result of plaintiff's alleged breach of the sales contract.

It, of course, makes no difference that the prior determination in this case was an award in arbitration rather than a judgment in an action (*Jacobowitz* v. *Herson,* 268 N. Y. 130, 134–136).

The analysis that has been set forth is not a technical delineation without difference in substance. Involved is the need for separating two entirely different categories of problems with which courts are confronted. On the one hand, there is the profound and imbedded philosophy that decided issues remain

decided, and that litigation come to an end. On the other hand, there is the equally compelling policy that fraud be frustrated, and consequently that one who defrauds not gain sanctuary merely because a narrow issue, by very reason of his fraud, has been determined in his favor, but by successful concealment of a larger and basically different scheme. If the total objective of the scheme was the determined issue, then there is a bar; but if the total objective was greater than the determined issue, and the determined issue was but a step or a part of the total objective, then there is no bar. In the one case the bar is that of *res judicata*. In the other case there lies an action for fraud independent of, extrinsic to, or antecedent (but not merely in the sense of chronological time) to the prior judgment.

Accordingly, the order denying the motion to dismiss the complaint for insufficiency should be reversed and the motion granted, with leave, however, to plaintiff to serve an amended complaint.

COHN, CALLAHAN and BASTOW, JJ., concur; DORE, J. P., dissents for reasons stated by the learned Justice at Special Term and votes to affirm.

Order reversed, with $20 costs and disbursements to the appellants, and the motion granted, with leave, however, to the plaintiff to serve an amended complaint.