231 F.2d 68
 Ennis M. NICHOLS, individually and on behalf of other
stockholders of Long Island Lighting Company, similarly
situated, and as Acting Chairman and member of the Committee
of the Common Stockholders Committee of Long Island Lighting
Company, and Common Stockholders Committee of Long Island
Lighting Company, Plaintiffs-Appellants,
v.
Harry A. ALKER, Edward F. Barrett, Dougall C. Fraser, John
Vannek, Samuel Housman, Lee P. Slack, Ethel W. Blakeslee, as
Executrix of the Estate of Charles G. Blakeslee, Deceased,
James W. Carpenter, William Rogers Coe, Errol W. Doebler,
George Link, Jr., Robert G. Olmstead, Edward J. Crummie,
Harry C. Hagerty, Thomas P. Booth, Albert F. Tegen, Percival
E. Jackson, Franklin S. Coons, Vincent T. Miles, William C.
Langley, Laurence M. Marks, David K. Kadane and Charles P.
Elbert, Defendants-Appellees.
 No. 39, Docket 23580.
 United States Court of Appeals Second Circuit.
 Argued Oct. 10, 1955.
Decided Feb. 14, 1956.
 
 Harold G. Aron, Madison, Conn., for plaintiffs-appellants.
 Winthrop, Stimson, Putnam & Roberts, New York City, Peter H. Kaminer, New York City, of counsel, for appellee Marks.
 David K. Kadane, Mineola, N.Y., pro se, Bertram D. Moll, Mineola, N.Y., of counsel, for appellees Barrett and others.
 Charles C. Lockwood, New York City, for appellee Vannek.
 Percival E. Jackson, New York City, pro se.
 Before FRANK, HINCKS and WATERMAN, Circuit Judges.
 WATERMAN, Circuit Judge.
 
 
 1
 Plaintiff appeals from an order of the United States District Court for the Eastern District of New York (Galston, J.) dismissing the complaint on the ground of res judicata and striking it from the files of the District Court as sham and false. The complaint was filed by Ennis M. Nichols, individually, and as representative of a group of common stockholders of the pre-reorganized Long Island Lighting Company ('Long Island'), and was brought against four groups of defendants: (1) officers and directors of the pre-reorganized Long Island (Alker, Barrett, Blakeslee, Fraser, Vannek, Housman, Slack, Elbert, Carpenter, Coe, Doebler, Link, Crummie, Hagerty, Tegen, and Marks); (2) agents of the pre-reorganized Long Island (Barrett, Olmstead, and Booth); (3) members and counsel of a preferred stockholders' committee (the Langley Committee) representing certain preferred stockholders of the pre-reorganized Long Island (Langley, Marks, Jackson); and (4) David Kadane, formerly of the Securities and Exchange Commission ('S.E.C.'), and now general counsel of the present Long Island. The complaint alleges in substance that these groups and Mr. Kadane fraudulently conspired together to defeat rights of the old common stockholders of the Long Island, allegedly created by and established under a 1944 plan of recapitalization of the Long Island ('the 1944 plan') which had been approved by the New York Public Service Commission. The same or strikingly similar charges have been before this court on four previous occasions. In re Long Island Lighting Co., D.C.E.D.N.Y.1950, 89 F.Supp. 513, affirmed sub nom. Common Stockholders Committee, etc. v. S.E.C., 2 Cir., 1950, 183 F.2d 45, certiorari denied 1950, 340 U.S. 834, 71 S.Ct. 64, 95 L.Ed. 612, petition to reopen denied 2 Cir., 1952, 197 F.2d 709; Nichols v. Long Island Lighting Co., 2 Cir., 1953, 207 F.2d 931, certiorari denied, 1954, 348 U.S. 827, 75 S.Ct. 45, 99 L.Ed. 652, petition for rehearing denied 1954, 348 U.S. 884, 75 S.Ct. 123, 99 L.Ed. 695, petition to amend denied 2 Cir., 1954, 211 F.2d 392. Reference to these opinions and to the opinion of Judge Kennedy enforcing the plan of reorganization approved by the S.E.C., In re Long Island Lighting Co., D.C.E.D.N.Y.1950, 89 F.Supp. 513, will supply in profuse detail the factual background of the present action.
 
 
 2
 It is desirable to summarize the history of the reorganization of the Long Island and the resulting litigation. By 1937 the Long Island had suspended full payment of dividends on its preferred stock. At this time and until 1945, the Long Island had been granted an exemption by the S.E.C. from the registration provisions of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq., ('P.U.H.C.A.').[1] The financial position of the Long Island and its subsidiaries continuing to deteriorate, the Long Island in 1944 submitted a reorganization plan to its stockholders. Under this plan the par value and current dividend rights of its preferred stock were to have been reduced by 40 per cent, the accrued dividend arrears of the preferred were not to be affected, and a new issue of common stock was to have been distributed approximately one half to the holders of preferred and one half to the holders of common. Although the plan was approved by the stockholders, and, with some modifications, by the Public Service Commission of New York, it was never put into effct.[2]
 
 
 3
 Shortly before the 1944 plan of reorganization was to be consummated, certain dissenting preferred stockholders of Long Island, realizing that the Public Service Commission of New York had only limited powers to compel readjustment of stock interests or voting rights, filed with the S.E.C. a petition asking the S.E.C. to revoke or modify the exemption previously granted. In November, 1944, the S.E.C. instituted proceedings to determine whether the exemption should be revoked or modified, and in December, 1944, the S.E.C. instituted an action in the United States District Court to restrain Long Island from taking any further steps to consummate the 1944 plan pending a determination by the S.E.C. as to whether the provisions of the P.U.H.C.A. should be extended to the Long Island. This attempt to enjoin the consummation of the plan failed in the first instance, S.E.C. v. Long Island Lighting Co., D.C.E.D.N.Y.1944, 59 F.Supp. 610, affirmed 2 Cir., 1945, 148 F.2d 252, and the certiorari granted by the Supreme Court, 324 U.S. 837, 65 S.Ct. 869, 89 L.Ed. 1401, became moot, 325 U.S. 833, 65 S.Ct. 1085, 89 L.Ed. 1961, when the S.E.C. completed its proceedings and revoked the exemption of Long Island from the P.U.H.C.A. The Long Island, which had heretofore contested the revocation of its exemption, now acquiesced in the order of the S.E.C., and registered in accordance with the provisions of the P.U.H.C.A.
 
 
 4
 In 1945 Long Island filed an application with the S.E.C. under § 11(e) of the P.U.H.C.A., 15 U.S.C.A. § 79k(e) for approval of a plan of reorganization and consolidation of Long Island with other Few York public utilities. For 4 years thereafter various plans were under consideration by the S.E.C. The Public Service Commission of New York was also involved in consideration of these plans until 1948, when it was held that it had no jurisdiction with respect to the allocation of securities of New York public utilities which were being reorganized under § 11(e) of the P.U.H.C.A.[3] In re King's County Lighting Co., D.C.E.D.N.Y.1947, 72 F.Supp. 767, affirmed sub nom. Public Service Commission of New York v. S.E.C., 2 Cir., 1948, 166 F.2d 784, certiorari denied 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763. The present plaintiffs formed a common stockholders committee in 1948 and took part in the S.E.C. proceedings. On November 16, 1949, the S.E.C. entered an order of consolidation and reorganization which, although giving the old common stockholders of Long Island much less than the 1944 plan, gave them in excess of 5 per cent of the new common stock to be issued. A petition for enforcement of this plan was granted by the District Court after a finding that the plan was fair and equitable. In re Long Island Lighting Co., D.C.E.D.N.Y.1950, 89 F.Supp. 513. We affirmed, 2 Cir., 183 F.2d 45, and certiorari was denied by the Supreme Court, 340 U.S. 834, 71 S.Ct. 64, 95 L.Ed. 612.
 
 
 5
 In April, 1952, approximately 18 months after the consummation of the reorganization, the present plaintiffs sought to set aside the order, reopen the proceedings, or be granted leave to file a bill of review in the District Court, on the ground that the order was entered 'under circumstances tantamount to fraud effected and committed by said Long Island Lighting Company upon the Securities and Exchange Commission, the court below and this court.'[4] We denied this motion, finding that the 'facts alleged in the petition do not show that fraud was practiced upon the Commission, the District Court, or this court,' In re Long Island Lighting Co., 2 Cir., 1952, 197 F.2d 709, 710.
 
 
 6
 Then, in November, 1952, the present plaintiffs sued the reorganized Long Island in an independent tort action alleging that the Long Island's predecessor corporation conspired with certain of its preferred stockholders to defeat rights of the plaintiffs allegedly created by and established under the 1944 recapitalization plan. The S.E.C. moved to intervene and dismiss the action as a collateral attack on the 1950 decree enforcing the consolidation. That decree contained an injunction, pursuant to 15 U.S.C.A. § 79k(e) and § 79r(f) to the effect: 'Long Island Lighting Company, Queens Borough Gas & Electric Company and Nassau & Suffolk Lighting Company, and all their creditors and security holders, and all persons be, and they are hereby enjoined and restrained from doing any act or taking any action interfering with, or tending to interfere with, these proceedings * * * including the commencement or prosecution of any action, suit or proceeding, at law or in equity, or under any statute, in any court or before any executive or administrative officer, commission or tribunal, other than such proceedings before the Commission or this Court as may be authorized by the Act or the Rules and Regulations promulgated thereunder, and such review, if any, in an appropriate Court of Appeals as may be provided by law.' The District Court, per Judge Inch, granted the motion of the S.E.C. to intervene, and dismissed the action as being a forbidden collateral attack on the reorganization decree. On appeal this court affirmed the dismissal for the reason given by the trial judge, and also on the ground of res judicata, Nichols v. Long Island Lighting Co., 2 Cir., 1953, 207 F.2d 931. Attempts by the present plaintiffs to compel the S.E.C. to receive testimony on the charges of fraud in the reorganization were dismissed by Judge Inch, following which we reaffirmed our previous holding on petition to amend, 2 Cir., 1954, 211 F.2d 392, certiorari denied 348 U.S. 827, 75 S.Ct. 45, 99 L.Ed. 652, petition for rehearing denied 348 U.S. 884, 75 S.Ct. 123, 99 L.Ed. 695.
 
 
 7
 The present action against officers, directors and agents of the predecessor corporation was begun late in October, 1954. The allegations of the complaint are almost identical to those contained in the complaint filed against the reorganized corporation in 1952, and it is obvious that the plaintiffs seek to avoid the conclusive effect of that and other prior adjudications by the device of shifting defendants.
 
 
 8
 The complaint in this action charges that an alleged conspiracy of the defendants, or some of them, defrauded the plaintiffs of the greater portion of their interest in the Long Island, vested in them pursuant to the 1944 plan of recapitalization, by carrying through the following steps of the conspiracy: (1) inducing the S.E.C. to institute federal court proceedings to prevent the imminent consummation of the 1944 plan and enjoin its enforcement;[5] (2) waiving the exemption of the Long Island from the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq. ('P.U.H.C.A.'), thereby submitting the Long Island to the jurisdiction of the S.E.C.;[6] (3) inducing the Long Island to file a plan of reorganization with the S.E.C., which, if adopted, would destroy all but a nominal part of the plaintiffs' interest in the Long Island; and (4) inducing the S.E.C. and the federal courts by misrepresentation, fraud and concealment to approve this plan of reorganization,[7] thereby completing the conspiracy.
 
 
 9
 Athough largely lacking in detailed factual allegations, the complaint indicates several of the means employed to carry out the various steps in the alleged conspiracy: (a) dual employment of Kadane (employed by the S.E.C. prior to March, 1946, and by the Long Island subsequent to September, 1946); (b) oppression of the common stockholders by failing to call stockholders' meetings, denying the common stockholders the right to examine corporate records, and failing to give them notice of the pendency of reorganization proceedings; (c) understatement of earnings by misrepresenting the prospective earnings of the Long Island to the S.E.C., and concealing the true earnings of the Long Island from this court; (d) overstatement of depreciation by misrepresenting and concealing before the S.E.C. and the federal courts the true facts in respect to depreciation; and (e) consideration of an offer of the Consolidated Edison Co. for the assets of Long Island in return for debentures at 'a price less than one half of the then true value.'
 
 
 10
 The plaintiffs brought this action in the United States District Court for the Eastern District of New York. Jurisdiction over the action was predicated solely on diversity of citizenship of the parties. One might therefore suppose that the Erie doctrine would require that New York law govern this action substantively.[8] But the primary issue involved is the scope and effect of a federal decree, and this of necessity is a question governed by federal law.
 
 
 11
 The reorganization decree here involved is immune from collateral attack. It rests on the special statutory jurisdiction conferred by § 11 and 24 of the P.U.H.C.A., 15 U.S.C.A. §§ 79k(e), 79r, and 79x(a). Such a decree, we think, is sui generis, and hence in determining its scope and effect, other adjudicated cases are not controlling. The P.U.H.C.A. provides an administrative procedure before a specialized governmental agency, the S.E.C., for the simplification of structure and consolidation of certain public utilities. The Act contains appropriate safeguards and provides that orders of the S.E.C. approving plans of reorganization shall be subject to judicial review by a United States Court of Appeals, 15 U.S.C.A. §§ 79k(b) and 79x(a). In addition, the Commission may bring an action 'in the proper district court of the United States' to enforce the plan and enjoin violations thereof, 15 U.S.C.A. §§ 79k(d) and (e), 79r(f). The district court in which the enforcement proceeding is brought (hereafter, the 'enforcing court') is empowered the approve the plan if it finds it 'fair and equitable and as appropriate. * * *' 15 U.S.C.A. §§ 79k(e). And both the Commission and the enforcing court 'may, to such extent as it deems necessary for purposes of enforcement of such order, take exclusive jurisdiction and possession of the company or companies and the assets thereof, wherever located.' §§ 79k(d) and (e). Thus the very scheme of the Act is such that a reorganization proceeding thereunder, just as fully as a reorganization under the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., binds all those holding securities affected by a plan approved by the court having jurisdiction thereof.[9]
 
 
 12
 We think it plain that the jurisdiction thus conferred upon the Commission and the Court, respectively, is exclusive, and beyond reach of attack through actions of any form whatsoever brought to courts other than the enforcing court. This conclusion we think is corroborated by the express grant of injunctive powers carried in the above-cited sections of the Act. The respective grants of general jurisdiction to the district courts contained in the Judicial Code are generally unaccompanied with express grant of power to enjoin interference with the jurisdiction involved. On that account, perhaps, judgments by courts of general jurisdiction are more vulnerable to collateral attack for fraud in their procurement. But the express grant of such power to an enforcing court under the P.U.H.C.A., like the similar provisions in the Bankruptcy Act, strongly suggests Congressional intent to immunize enforcement decrees from such attack.
 
 
 13
 We find no cases in conflict with these conclusions.[10] Indeed, the cases touching the problem most closely certainly are consistent with our view and tend to confirm our conclusions. See particularly, In re United Gas Corp., D.C.D.Del., 58 F.Supp. 501, affirmed 3 Cir., 162 F.2d 409; Auburn Savings Bank v. Portland R. Co., 144 Me. 74, 65 A.2d 17, certiorari denied 338 U.S. 831, 707 S.Ct. 74, 94 L.Ed. 506, rehearing denied 338 U.S. 881, 70 S.Ct. 156, 94 L.Ed. 541; Okin v. S.E.C., 2 Cir., 161 F.2d 978. Cf. In re Federal Water & Gas Corp., 3 Cir., 188 F.2d 100; General Protective Committee, etc. v. S.E.C., 346 U.S. 521, 74 S.Ct. 261, 98 L.Ed. 339, rehearing denied 347 U.S. 911, 74 S.Ct. 474, 98 L.Ed. 1068. And such is the purport of S.E.C. v. Central-Illinois S. Corp., 338 U.S. 96, 69 S.Ct. 1377, 93 L.Ed. 1836, that even the enforcing court, on a direct petition to reopen its decree on the ground of fraud in its procurement, could go no further than to vacate its decree (or perhaps so much of its decree as approved the treatment of common stock) and remand the plan to the S.E.C. for further consideration.
 
 
 14
 Practical considerations support this conclusion. Simplification or consolidation proceedings under the P.U.H.C.A. are in rem proceedings involving a multiplicity of parties. The enforcing court becomes familiar with the parties and the issues involved, and for this reason the parties participating in the reorganization should have some protection from harassing actions brought before various other tribunals.
 
 
 15
 The plaintiffs contend that this action is not a direct or collateral attack on the reorganization decree-- they contend that it is an independent tort action seeking only damages from individual officers, directors, and other individuals as distinguished from a reallocation of the corporate securities amongst the several classes of security holders. This contention, however, will not withstand analysis. Although in form an independent action for damages, this action in effect is one to obtain for the common stock of Long Island a more favorable treatment than that provided by the decree in the reorganization proceedings. This is so because it will necessarily involve the litigation of matters within the sole competence of a specialized administrative agency (the S.E.C.) and because it depends upon rights extinguished by the reorganization decree.
 
 
 16
 The plaintiffs' complaint inescapably rests on the assertion that they received less in the reorganization proceedings that they thought they were entitled to receive.[11] The only allegations of the complaint which venture any detail as to the alleged conspiracy make it quite clear that if the allegations be taken as true a fraud was perpetrated by the defendants upon the S.E.C. and the federal courts by the obtaining of Commission and court approval of the reorganization.[12] In order for the plaintiffs to recover in this action, they must prove that they suffered damage because the reorganization decree was fraudulently procured. This would amount to a showing that: (a) the conspiracy of the defendants effected a fraudulent disposition of the assets of the Long Island, and (b) if such fraudulent disposition had not occurred, the S.E.C. would have given the plaintiffs exactly as much as the Public Service Commission of New York had rather unwillingly agreed to allow them.[13] We think it obvious that both of these matters should not be litigated in courts other than the enforcement court provided for by the P.U.H.C.A., and that in that court the proceedings should be by direct rather than collateral attack.
 
 
 17
 Moreover, damage to the plaintiff is an essential element of a tort action for fraud. The only damages asserted in the instant action are such as pertain to the plaintiffs below as holders of the pre-reorganization common stock. The decree provided that 'all rights, interest and claims of the common stockholders of Long Island Lighting Company * * * shall cease and determine' except as provided for in the plan. It follows that the instant action, in that it depends upon the pre-reorganization value of the common stock, is one seeking to assert a right extinguished by the decree. This is so even though the recovery sought is only from the named defendants without involving any adjustment of the treatment afforded by the plan to other classes of security holders. Thus necessarily the action is in derogation of at least one important feature of the plan and violates the injunction against interference with the decree in the reorganization proceedings.
 
 
 18
 Accordingly, we think that the action was rightly dismissed. But we prefer to predicate the dismissal upon the grounds that the instant action was brought in violation of the injunction in the reorganization decree and constituted an attack on that decree not permissible under the P.U.H.C.A. We hold that through the device of an apparently independent tort action the plaintiffs below may not bypass the Commission and the enforcement court in an effort to alleviate their treatment under the plan approved by the reorganization decree.
 
 
 19
 This, of course, is not to say that the reorganization decree was immune from direct impeachment for fraud in its procurement. Under Fed.Rules Civ.Proc. rule 60(b), 28 U.S.C.A., a direct motion to the enforcement court afforded a remedy to the plaintiffs below. And perhaps this action, since it invoked the general jurisdiction of the same court, which in the exercise of its jurisdiction under the P.U.H.C.A. entered the enforcement decree, might have been treated as a motion under F.R.C.P. 60(b) seeking at least a partial reopening of the earlier decree on the ground of alleged fraud. But these very plaintiffs in 1952 sought to reopen the reorganization proceeding on the ground that S.E.C. approval and court enforcement of the plan of reorganization was procured by means of fraud. We considered the charges of fraud presented at that time and denied that petition 'on the ground that no fraud or other basis for relief under Rule 60(b), F.R.C.P., is made to appear' (2 Cir., May 21, 1952, unreported).[14] On rehearing we again stated that 'the facts alleged in the petition do not show that fraud was practiced upon the Commission, the District Court or this court.' In re Long Island Lighting Co., 2 Cir., 197 F.2d 709, 710. We stated then that 'this court has jurisdiction to set aside its judgment if the judgment was induced by fraud upon the court practiced by a party to the litigation.' 197 F.2d 709, 710. We adhere to that view.
 
 
 20
 It follows that, even had the court below treated the pending action as a direct motion for reopening under Rule 60(b), our former decision that the allegations of fraud were insufficient to justify a reopening would have constituted either a bar to reopening or an authoritative precedent for another ruling to the same effect. For the allegations of fraud contained in the complaint in this action are substantially similar to those presented in 1952, and, to the extent that they are dissimilar or more complete, they were known to the plaintiffs and could have been presented at that time.[15] Further, we think it proper to suggest that if the plaintiffs, unless they can show further justification than that shown in their present complaints and in those heretofore dismissed, should make yet another motion for reopening to the enforcement court, an order of denial be entered accompanied by an appropriate injunctive order directed to counsel as well as to plaintiffs restraining further litigation against the reorganized company and those individuals who directly or indirectly participated in its reorganization.
 
 
 21
 Affirmed.
 
 
 22
 FRANK, Circuit Judge (concurring).
 
 
 23
 I concur in the decision, but I think my colleagues travel the wrong road to reach the correct conclusion.
 
 
 24
 1. Of course, the 'enforcing court' (i.e. the court which enforced the S.E.C. order approving the plan) had exclusive jurisdiction of everything relating to the plan and to the allocation of the assets of the reorganized company, i.e. the allocation of securities issued pursuant to the plans. Of course, too, that court's injunction prohibited the plaintiffs from taking any steps whatever, except in the enforcing court, to obtain a larger share of the assets of that company. For that reason, among others, this court held that a previous suit by plaintiffs, against the reorganized company itself, could not be maintained. See Nichols v. Long Island Lighting Co., 2 Cir., 207 F.2d 931, and 2 Cir., 211 F.2d 392.
 
 
 25
 In the present suit, however, plaintiffs do not seek to obtain a larger share of the reorganized company's assets. Instead-- precisely because the judgment of the enforcing court (including its injunction) prevented their doing so-- they seek damages, not from the company, but from persons who, so plaintiffs allege, wrongfully brought about that judgment. In other words, the present suit is based upon a tort consisting of the alleged harm done to plaintiffs by the wrongful conduct of the defendants. If plaintiffs were to win in the present suit, they would indeed have more than the securities allotted to them under the plan. But that added recovery would in no way diminish the assets of the reorganized company, nor would it be at the expense of the other participants in the plan. Consequently, I cannot agree that plaintiffs seek to 'assert a right extinguished by the decree' in the reorganization proceedings.
 
 
 26
 I think when B, by certain kinds of fraudulent conduct, helps to bring about a judgment adverse to A in a suit by A against C, then B has committed a tort as against A, so that A may maintain an action for that tort against B. Such a tort action is not a collateral attack on the judgment adverse to A in his suit against C.[1] To be sure, it is generally held that, if the wrongful conduct of B consisted solely of perjury at the trial in the suit between A and C, that wrong is not actionable; the most cogent reason for such rulings is that, on grounds of policy, the courts regard such an action, based upon such perjury, as undesirable, because the fear of such a possible action may tent to induce honest witnesses not to testify.[2] But here the plaintiffs charge the defendants with a general conspiracy-- involving fraud on the S.E.C. and the enforcing court-- of which perjury in the reorganization proceedings was but an incident.[3] Accordingly, I think that in bringing the present suit (1) the plaintiffs did not violate the injunction, and (2) that this suit cannot properly be dismissed on the ground that the enforcing court in the reorganization proceedings had exclusive jurisdiction of such a nature as to bar the present suit.
 
 
 27
 2. The correct basis for dismissing the complaint is, I think, the following: In the reorganization proceedings-- including those in the enforcing court and on appeal from its judgment-- the very facts which plaintiffs now assert were considered, and findings on those facts were made adverse to plaintiffs. See Common Stockholders Committee, etc. v. S.E.C., 2 Cir., 183 F.2d 45, and In re Long Island Lighting Co., 2 Cir., 197 F.2d 709. Indeed, when this court decided against these plaintiffs in their suit against the company, it did so, in part, on that very ground; see Nichols v. Long Island Lighting Co., 2 Cir., 207 F.2d 931, 934, and 2 Cir., 211 F.2d 392, 393. As the decision in that suit against the company did not rest on a trial at which testimony was received (or the equivalent), and as there were no findings of fact, it probably did not, itself, give rise to a collateral estoppel here.[4] But we surely can and should accept that decision as the most reliable sort of stare decisis to the effect that the previous decision in the reorganization case did operate as a collateral estoppel as to the facts which plaintiffs now allege.
 
 
 28
 Most of the present defendants were, I think, sufficiently 'in privity' with the company, and with others opposed to the present plaintiffs in the reorganization proceedings, so that the findings in the reorganization proceedings constitute a collateral estoppel which precludes this suit.[5]
 
 
 29
 As to the others, the district judge dismissed the complaint, as a sham pleading, on the basis of facts stated in the defendant's affidavits and facts appearing in the record of the reorganization proceedings. Those statements of fact flatly denied, as to these defendants, the allegations of the unsworn complaint. In effect, as to these defendants, the judge entered a summary judgment. Plaintiffs filed no counter-affidavit disputing the facts as asserted in the affidavits and appearing in the record. Since those facts were not at all peculiarly within the knowledge of the defendants, I think inapposite the doctrine enunciated in such cases as Subin v. Goldsmith, 2 Cir., 224 F.2d 753, 755, 757-761, and in Alvado v. General Motors, 2 Cir., 229 F.2d 408.
 
 
 30
 My colleagues in footnote 11 of their opinion say that, since the complaint lacks allegations 'to the effect that the S.E.C. was fraudulently induced to exert a jurisdiction over the Long Island which, in actual fact, did not exist, the complaint does not show that the plaintiffs have been wronged in this regard.' To that extent, my colleagues justify a dismissal on the merits. I incline to agree. But my colleagues do not rest their decision on that ground.
 
 
 
 [1]
 The exemption from the provisions of the P.U.H.C.A., according to the terms of the Act, 15 U.S.C.A. § 79c(c), was subject to revocation or modification, after notice and opportunity for hearing, in the event of changed circumstances. See Long Island Lighting Co., 1 S.E.C. 345; 18 S.E.C. 717
 
 
 [2]
 The Public Service Commission of New York expressed dissatisfaction with the 1944 plan and stated that it was overly favorable to the holders of common stock. After referring to deficiencies in the capital structure and in the distribution of voting power among the stockholders of the Long Island, the Commission concluded with an invitation for S.E.C. intervention:
 'The power of the Commission (the Public Service Commission) to remedy this condition directly is nil. The Security and Exchange Commission has dealt summarily with such conditions in companies under their jurisdiction, but we have no power to compel a company to readjust its stocks or voting rights in accord with what is considered sound finance and equitable considerations.'
 I annual Report of P.S.C. for 1944, p. 555.
 
 
 [3]
 The plaintiffs have contended ever since 1948 that the reorganization of the Long Island should have been governed by Law York law, and carried out under the jurisdiction of the Public Service Commission. They charge that the removal of the Long Island from the jurisdiction of the state commission to that of the S.E.C. was a wrongful act. They overlook the fact that we have held: (1) that the S.E.C. was given jurisdiction by Congress over the reorganization of the Long Island, 183 F.2d 45, 48; (2) that the New York Public Service Commission did not have jurisdiction over the reorganization of the Long Island, 166 F.2d 784; and (3) that federal law governs in a reorganization carried out under the P.U.H.C.A., 166 F.2d 784
 
 
 [4]
 The factual charges of fraud raised in 1952 in the petition to reopen, and in the petition for rehearing after the petition petition for rehearing after the petition had been denied, were as follows: (a) the officers and counsel of Long Island knowingly overstated the depreciation reserve in the proceedings before the S.E.C., the district court, and this court; (b) they 'radically and fraudulently' changed their position with respect to this depreciation reserve; (c) they knowingly understated prospective earnings of the Long Island and deliberately concealed the true facts relating thereto; (d) an omnibus allegation, quoted below, which contained in capsule form almost every allegation made in this case, viz:
 '(6) Rehearing and reargument will afford this Court, on a fuller showing of the facts, an opportunity to decide the paramount issues presented by the petition:
 '(A) Whether there is nothing in the ten year juridical and commission history of this proceeding, to shock the conscience of the Court, where a reorganization of the Long Island Lighting Company, an intrastate New York corporation, completed to the finality of the cessation of trading in the stock of the Company, under the statutes of New York state, is abrogated without notice, much less consent of its common and only voting stockholders, by the forcible entry and intervention of a Federal commission, which at the time of such intervention was totally without authority, as this Court has previously decided ((S.E.C. v. Long Island Lighting Co., 2 Cir.,) 148 F.2d 252); where, without knowledge, much less consent of its stockholders, the Company surrenders, in the face of and because of such decision, its immunity from the jurisdiction of the Securities and Exchange Commission; where to accomplish this intervention and oust the State of New York of its authority, the first move is counselled, in appearance before this Court eight years ago, by a specially retained attorney for the S.E.C. who, after repeated intermediate appearances on its behalf, on the accomplishment of the intervention in this very Court in this very proceeding, now appears as general and special counsel for the same company, the Long Island Lighting Company, against which he first appeared in this Court on a motion against it to enjoin its state-approved and completed reorganization; where that intervention was admittedly based on an 'invention' by certain lawyers of preferred stockholders of suppositious grounds to inject S.E.C. into the reorganization, to supersede the Public Service Commission of New York and to frustrate the unassailable recapitalization of the Long Island Lighting Company in 1944 by the action of more than two-thirds of its stockholders; where the result of that intervention was to reduce the participation in the common stock of the re-organized company of these petitioners from 49% to less than 6%; where that re-organization is accomplished by denying these petitioning stockholders for a period of eight years any opportunity to meet and elect or remove directors and by preventing those stockholders from obtaining or contributing funds for the common defense of their rights.'
 
 
 [5]
 On November 10, 1944, the S.E.C. instituted proceedings under Section 3(c) of the P.U.H.C.A., 15 U.S.C. § 79c(c), to determine whether the exemption granted to Long Island should be revoked or modified. While the revocation proceedings were in progress before the S.E.C., the S.E.C. instituted an action in the Eastern District to restrain the Long Island from taking any further steps to consummate the 1944 plan pending a determination by the S.E.C. of the issues involved in the revocation proceeding. The Eastern District held that it had no power to grant the requested relief, S.E.C. v. Long Island Lighting Co., D.C.E.D.N.Y.1945, 59 F.Supp. 610, and this court affirmed, 2 Cir., 1945, 148 F.2d 252, with one judge dissenting. The majority decision was later overruled by us in West India Fruit & Steamship Co. v. Seatrain Lines, Inc., 2 Cir., 1948, 170 F.2d 775
 On April 21, 1945, after hearings, the S.E.C. entered its order revoking the Long Island's exemption from the P.U.H.C.A. and bringing its reorganization within the jurisdiction of the S.E.C. Long Island Lighting Co., 18 S.E.C. 717.
 
 
 [6]
 On April 23, 1945, in compliances with the order of the S.E.C., the Long Island registered as a holding company under the P.U.H.C.A. The jurisdiction of the S.E.C. over the Long Island was contested by the common stockholders before the Eastern District and this Court. It was held that the S.E.C. did have jurisdiction over the Long Island. In re Long Island Lighting Co., 89 F.Supp. 513, 518-519, affirmed 2 Cir., 183 F.2d 45, 48
 
 
 [7]
 Claims of misrepresentation, fraud, and concealment were presented to us in 1952 in the petition to reopen the reorganization proceeding filed by these same plaintiffs. We considered the charges presented at that time and denied the petition. 197 F.2d 709, 710. See note 4, supra
 
 
 [8]
 It now seems well established that the Erie (Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188) doctrine applies, whatever the basis of federal jurisdiction, to any issue in a case which is governed by state law. See, e.g., Rothenberg v. H. Rothstein & Sons, 3 Cir., 1950, 183 F.2d 524, 21 A.L.R.2d 832. Cf. Wichita Royalty Co. v. City National Bank, 1939, 306 U.S. 103, 107, 59 S.Ct. 420, 83 L.Ed. 515. Likewise, the Erie doctrine is clearly inapplicable with respect to issues governed by federal law, even if the jurisdiction of the federal court rests on diversity of citizenship. See Sola Electric Co. v. Jefferson Electric Co., 1942, 317 U.S. 173, 176, 63 S.Ct. 172, 87 L.Ed. 165; cf. Prudence Realization Corp. v. Geist, 316 U.S. 89, 95, 62 S.Ct. 978, 86 L.Ed. 1293
 Since the initial issue here is the scope and effect of a reorganization decree rendered pursuant to a federal statute by a federal court, it is unnecessary for us to consider such New York cases as Verplanck v. Van Buren, 1879, 76 N.Y. 247; Ross v. Preston, 1944, 292 N.Y. 433, 55 N.E.2d 490; Young v. Leach, 1898, 27 App.Div. 293, 50 N.Y.S. 670; and Burbrooke Mfg. Co. v. St. George Textile Corp., 1954, 283 App.Div. 640, 129 N.Y.S.2d 588, which hold that under certain circumstances a judgment procured by means of a fraudulent conspiracy will not prevent a tort action against the wrongdoers by those wrongfully deprived of property interests in an in rem legal proceeding.
 
 
 [9]
 See e.g., Brown v. Gerdes, 1944, 321 U.S. 178, 64 S.Ct. 487, 88 L.Ed. 659 (exclusiveness of jurisdiction of bankruptcy court); Mar-Tex Realization Corp. v. Wolfson, 2 Cir., 1944, 145 F.2d 360 (power of bankruptcy court to reserve jurisdiction over debtor corporation and enjoin state court proceedings); Evans v. Dearborn Machinery Movers Co., 6 Cir., 1952, 200 F.2d 125 (power of bankruptcy court to enjoin state court action brought by creditor who was not scheduled and did not know of proceedings); In re Union League Club of Chicago, 7 Cir., 1953, 203 F.2d 381, 386 (conclusive effect of reorganization decree as to questions which might have been raised as well as to those litigated). Several reorganizations under the Bankruptcy Act have raised issues concerning the scope and effect of a reorganization decree which are somewhat similar to those involved in the instant case: Shores v. Hendy Realization Co., 9 Cir., 1943, 133 F.2d 738; National Lock Co. v. Hogland, 7 Cir., 1938, 101 F.2d 576, 583-586
 
 
 [10]
 The statement in Petition of Blatchley, 1 Cir., 1946, 157 F.2d 894, at 898, that 'It is not at all clear to us that the injunction (incorporated in the reorganization decree) in its present terms would forbid the commencement or prosecution of (tort actions by a stockholder against officers and directors of the pre-reorganization corporation)' is clearly a dictum. Cases such as Downing v. Howard, 3 Cir., 1947, 162 F.2d 654, certiorari denied 1947, 332 U.S. 818, 68 S.Ct. 155, 92 L.Ed. 395, and Goldstein v. Groesbeck, 2 Cir., 1944, 142 F.2d 422, 154 A.L.R. 1285, certiorari denied 1944, 323 U.S. 737, 65 S.Ct. 36, 89 L.Ed. 590, are distinguishable since they involve the different question of whether the violation of provisions of the P.U.H.C.A. by management officials creates a statutory liability
 
 
 [11]
 The defendants are alleged to have initiated their conspiracy by inducing the S.E.C. to institute federal court proceedings to prevent the imminent consummation of the 1944 plan and enjoin its enforcement, and by waiving the exemption of the Long Island from the P.U.H.C.A., thereby submitted the Long Island to the jurisdiction of the S.E.C. However, such acts would not be tortious even had they occurred as alleged
 The S.E.C. had power to exempt the Long Island from the provisions of the P.U.H.C.A., 15 U.S.C.A. § 79c. Such exemption was subject to revocation or modification, after notice and opportunity for hearing, in the event of changed circumstances. 15 U.S.C.A. § 79c(c). See Long Island Lighting Co., 1 S.E.C. 345. The S.E.C. concluded, after an appropriate notice and hearing, that the exemption previously granted to the Long Island should be withdraw. Long Island Lighting Co., 18 S.E.C. 717. Accordingly, the S.E.C. assumed jurisdiction over the assets of the Long Island and the reorganization proceedings of which plaintiffs complain were commenced. Jurisdiction of the S.E.C. over the Long Island was based on the interstate distribution of Long Island's securities. The plaintiffs below do not contend that the S.E.C. was misled into accepting jurisdiction of the Long Island by fraudulent and erroneous statements as to the interstate distribution of Long Island's securities. Thus it appears uncontested that the securities of the pre-reorganized Long Island were distributed in interstate commerce, and that, therefore, neither the S.E.C. nor anyone else acted improperly in taking or suggesting such jurisdiction. For we have held that, under such circumstances, the S.E.C. had jurisdiction over the Long Island. Common Stockholders Committee, etc. v. S.E.C., 2 Cir., 183 F.2d 45, 47-48, affirming In re Long Island Lighting Co., D.C., 89 F.Supp. 513, 518-519. Cf. Halsted v. S.E.C., 86 U.S.App.D.C. 352, 182 F.2d 660; Public Service Comm. of New York v. S.E.C., 2 Cir., 166 F.2d 784.
 Further, it appears from the opinions of this Court that the management of the pre-reorganized Long Island did, in actual fact, contest the jurisdiction of the S.E.C. and the power of the S.E.C. to enjoin the Long Island from consummating the 1944 plan. S.E.C. v. Long Island Lighting Co., D.C.E.D.N.Y. 1945, 5. F.Supp. 610, affirmed 2 Cir., 1945, 148 F.2d 252, remanded because moot 325 U.S. 833, 65 S.Ct. 1085, 89 L.Ed. 1961. Once the S.E.C. had revoked the Long Island's exemption, the management of the Long Island did not act improperly in filing a registration statement as required by the Act. 15 U.S.C.A. § 79e. Failure to register might have subjected the officers and directors to the sanctions contained in the Act. 15 U.S.C.A. § 79z-3.
 We conclude that the allegations concerning the taking of jurisdiction by the S.E.C. and the 'waiver of exemption' by Long Island cannot be the basis for a tort recovery. Certainly an interested group of stockholders or creditors can suggest to the S.E.C. that it revoke an exemption previously granted to a public utility without creating tort liability. It is only to be expected that groups of shareholders and creditors will advance positions to regulatory bodies which are favorable to themselves, and there is nothing wrongful about their so doing. Absent any allegations to the effect that the S.E.C. was fraudulently induced to exert a jurisdiction over the Long Island which, in actual fact, did not exist, the complaint does not show that the plaintiffs have been wronged in this regard. For, as we have held, the S.E.C. had jurisdiction over the Long Island, and to assert that the defendants are liable in tort because they brought that jurisdiction to the attention of the S.E.C. is virtually equivalent to asserting that the S.E.C. has wronged the plaintiffs by exercising a jurisdiction over the Long Island which Congress has seen fit to give the S.E.C. The plaintiffs appear to be unaware of the fact that federal legislation, when constitutional, is paramount to state legislation, and that Congress, by creating a statutory scheme of simplification and consolidation applicable to public utilities selling their securities in interstate commerce, could rightfully deprive the plaintiff of advantages which would otherwise be available to them under the law of New York. Public Service Commission of New York v. S.E.C., 2 Cir., 166 F.2d 784.
 The result is that the only allegations of the complaint which assert acts on which a tort recovery might be predicated are those stating, in substance, that the plan of reorganization was obtained, approved, and confirmed by means of fraud practiced on the Commission and the federal courts by the defendants. This analysis plainly reveals that the real complaint of the plaintiffs is that the reorganization decree fraudulently diminished their interest in the Long Island. This is an assertion that, were it not for the fraud practiced on the Commission and the courts by these defendants, the plaintiffs would have received a far larger share in the assets of the reorganized Long Island.
 
 
 [12]
 Specifically: (1) The allegations concerning the dual employment of Kadane carry the clear inference that Kadane was corrupted by the promise of a high position with Long Island, and that in his capacity as an official of the S.E.C. and later as an employee of Long Island, he induced the S.E.C. to adopt the plan of which plaintiffs complain, and helped perpetrate a fraud upon the enforcing and reviewing courts. (2) The allegations of concealment and misrepresentation concerning the actual and prospective earnings of Long Island and concerning depreciation indicate that the approval of the plan by the S.E.C. and by this Court was tainted with fraud. There is a specific allegation that defendants Elbert, Barrett, Olmstead, and Booth 'knowingly gave misleading testimony * * * in furtherance of * * * the conspiracy.' (3) The repeated allegations in this and prior proceedings of oppression of common stockholders are made in such broad terms that, if believed, the proceedings confirming and enforcing the plan would have denied the plaintiffs due process of law
 
 
 [13]
 See not 11 supra. The reluctance of the New York Public Service Commission in approving the 1944 plan is obvious from the portion of its report quoted in note 2 supra
 
 
 [14]
 Plaintiffs' brief indicates a misconception of this decision. It states that the petition to reopen was not within Rule 60(b), Federal Rules of Civil Procedure, 'which was not available because of lapse of time' but upon the 'inherent power (of every tribunal) to reopen and revise a decision induced by fraud.'
 To the extent that federal district courts possess such inherent power after the one year period of limitation on Rule 60(b)(1), (2) and (3), the authority for its exercise is codified in the savings clause of Rule 60(b) which states, 'This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified * * * or to set aside a judgment for fraud upon the court.' See 7 Moore's Federal Practice P60.31, 60.36 et seq. (1955). West Virginia Oil & Gas Co. v. George E. Breece Lumber Co., 5 Cir., 1954, 213 F.2d 702. Cf. Hadden v. Rumsey Products, 2 Cir., 1952, 196 F.2d 92.
 
 
 [15]
 See note 4 supra
 
 
 [1]
 A asserts that B, by his fraudulent conduct, intentionally harmed A; A thus shows a prima facie tort. B must therefore defend on the ground that his conduct is immune from liability. He attempts to do so thus: 'I admit, arguendo, that I committed the alleged fraud; but I am not liable, simply and solely because the judgment adverse to A, in his suit against C, is a bar.' I think such a defense is untenable
 A judgment may be the means by which a fraudulent conveyance is accomplished. Northern Pacific R. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931; Glenn, Fraudulent Conveyances (1944) s. 224; Frank, Some Realistic Reflections on Corporate Reorganization, 19 Va.L.Rev. (1933) 541. A judgment creditor of the debtor may pursue the grantees of that conveyance without attacking or disturbing the judgment. If he sues one who is not a grantee but who aided in bringing about the fraudulent conveyance, his action is one for a tort; see Glenn, Fraudulent Conveyance (1940) Sec. 56; Phelan v. Middle States Oil Corp., 2 Cir., 220 F.2d 593, 615-616; cf. Findlay v. McAllister, 113 U.S. 104, 114, 5 S.Ct. 401, 28 L.Ed. 930.
 
 
 [2]
 Godette v. Gaskill, 151 N.C. 52, 53, 65 S.E. 612, 24 L.R.A.,N.S., 265; Stevens v. Rowe, 59 N.H. 578; Hocker v. Welti, 239 Ill.App. 392, 397
 
 
 [3]
 Cf. Robinson v. Missouri Pacific Transp. Co., D.C., 85 F.Supp. 253, 258; Verplanck v. Van Buren, 76 N.Y. 247 as interpreted in Burbrooke Mfg. Co. v. St. George Textile Corp., 283 App.Div. 640, 129 N.Y.S.2d 588 and in Anchor Wire Corp., v. Borst, 278 App.Div. 728, 102 N.Y.S.2d 871, 873; Dictograph Products Co., Inc., v. Sonotone Corp., 2 Cir., 231 F.2d 867 (C.A. 2, March 28, 1956)
 Most of those cases dealt with collateral attacks; their reasoning therefore applies a fortiori to a case like the instant case.
 Dictograph Products Corp., Inc. v. Sonotone .corp., supra, disposes of the intrinsic-extrinsic fraud distinction in the federal courts, even in a collateral attack suit.
 
 
 [4]
 Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122
 
 
 [5]
 See, e.g., Judge Goodrich's concurring opinion in Bruszewski v. United States, 3 Cir., 181 F.2d 419, 423; Adriaanse v. United States, 2 Cir., 184 F.2d 968