T. Paul Kane, J.
Plaintiff-petitioner New York Telephone Company (the “ Company ”) has commenced an article 78 proceeding and an action for a permanent injunction against the Public Service Commission of the State of New York (the “Commission”), both in relation to a final decision by the Commission pertaining to a rate increase sought by the Company (CPLR 7801, 6301).
Incident to the action for an injunction the Company seeks a preliminary injunction pending the trial of the action and also a stay of the implementation of the final rates fixed by *487 the Commission which were scheduled to go into effect on October 15,1970. At the conclusion of the oral argument on October 9, I extended the stay until such time as the within matter was decided.
On March 20, 1969, the Company filed a rate increase with the Commission designed to produce an additional $175 million annually. The Commission suspended this increase for 10 months and allowed an interim increase of $136 million on February 24, 1970, which on July 1, 1970 was reduced in its final order to approximately $105 million. It ordered refunds for the excesses of the interim rates during the period they were in effect. On June 16,1970, the Company filed a petition to reopen the hearings, which application was denied in the final order of July 1. On July 9 the Company petitioned the Commission for a stay of the July 1 order pending the filing and disposition of a petition for rehearing. The Commission ordered a stay of its July 1 order on July 13 and on July 28 the Company petitioned fór a rehearing alleging that the rate of return under the interim rates was confiscatory. On September 1, 1970, the Commission, by a three to two vote, issued an order denying the Company’s application for rehearing but amending the July 1 order to provide an increase in revenues to approximately $120 million. Thereafter some additional relief was sought but denied by the Commission and the Company commenced the present action. All of the above chronology is undisputed as are all of the material facts relating thereto.
The hearings on the proposed rate increase were held between May 7,1969 and October 1,1969, during which time 5,275 pages of testimony were taken and 138 exhibits received in evidence. It appears that the Company, with the consent of the Commission, selected the year 1968 as the test period for determining the rate increase, a year that produced a rate of return of 8.87%. In its decision of July 1 the Commission determined that a reasonable rate of return for the Company would be 7.875%. The record reveals that an allowance of the fully $175 million increase in revenue, according to the Company’s calculations at that time, would produce a rate of return of 8.89% before providing for attrition, a factor that takes into consideration increased costs resulting from general inflation. Once the Company determined that the forecast was quite divergent from experience, it submitted proof of its actual experience for the first three months under the interim rates which show that the Company’s rate of return was only 5.78%. As indicated above, the petition to reopen the hearings was denied and at a later date in the petition for rehearing of the order of July 1, the *488 Company submitted proof of the actual rate of return under the interim rates from March through August, 1970, which rate was shown to be 5.69%. The Company also showed that under the presently requested rates $175 million, on the basis of the March-August, 1970 experience, the rate of return would only be 6.36%, a return considerably less than that fixed by the Commission (7.875%) and that which the Company was earning when it applied for higher rates (6.87%).
Basically the controversy between the Company and the Commission is whether the Commission could ignore the Company’s 1970 experience in light of what appeared to be a drastic change in the Company’s economic circumstances between 1968 and 1970.
The denials by the Commission of the petition for reopening of the hearings and the petition for a rehearing have caused what the Company considers to be a confiscatory result. It is based upon this contention that the action for a permanent injunction has been commenced and the provisional remedy sought, although the Company admits they have resorted to an extraordinary remedy and one which has a narrow legal basis. It is argued that if the Company relies solely upon the remedy of an article 78 proceeding, the usual method of obtaining judicial review, irreparable harm will be done by the action of the Commission.
The Company’s cause of action for an injunction is based upon the holding of the New York Court of Appeals in Staten Is. Edison Corp. v. Maltbie (296 N. Y. 374) which held that where an order of the Public Service Commission is challenged upon the ground that it is confiscatory, an injunction action may be brought in the Supreme Court to obtain an independent judicial determination on the facts as well as the law. This Court of Appeals decision has never been overruled although the once accepted doctrine upon which it was based (Ohio Val. Co. v. Ben Avon Borough, 253 U. S. 287) has been cast in doubt (Alabama Comm. v. Southern Ry. Co., 341 U. S. 341; Baltimore & Ohio R. Co. v. United States, 105 F. Supp. 631; New York, New Haven & Hartford R. R. Co. v. United States, 289 F. Supp. 418). The Court of Appeals of this State has recently commented upon the Staten Island case (supra), stating that “Moreover, this alternative suggestion by respondents rests on reasoning associated with the now dubious rule in the Ben Avon and Staten Island cases ” (Mount St. Mary’s Hosp. v. Catherwood, 26 N Y 2d 493, 509), but the doubt cast cannot be considered tantamount to an overruling of the law of that case.
*489 Furthermore, if the Staten Island case is to be overruled, it should be done by the Court of Appeals and not by this court (Matter of Garvey Carting & Stor. v. State Tax Comm., 27 A D 2d 337; Sackler v. Sackler, 16 A D 2d 423). In concluding that this decision still has vitality is not to suggest that the remedy it provides should be utilized except under the most extreme circumstances, a conclusion with which the Company agrees. The affidavits on the motion for a preliminary injunction are not contradicted by the responding affidavits although the contents of the former are challenged in the memorandum of law of the Commission. But I conclude that the substantial facts in relation to the actual experience of the Company during the March-August, 1970 period are essentially uncontradicted and will be presumed true (7A Weinstein-Korn-Miller, N. Y. Civ. Frac., par. 6312.06). "Upon a rehearing or trial of an action, these figures obviously would bear close scrutiny and proof, but assuming these true for the purposes of this motion, and considering the fact that the Commission itself has deemed a reasonable rate of return to be 7.875%, the result of a 5.35% rate of return under the final rates of the Commission would cause irreparable harm to the Company. It is in this instance that the article 78 proceeding would be an exercise in futility as to what is occurring presently, losses of revenue which cannot be recouped.
While this court has no desire to question the rate making processes of the Commission, nor to quarrel with the conclusions of the experts who have so thoroughly developed the record in this case, I am compelled to seriously question the decision of the Commission in failing to reopen the hearings or grant a rehearing with the preliminary facts placed before it by the Company. In fact, I conclude that as a matter of law it was the Commission’s duty to take the actual experience under the interim rates into consideration in making its final decision. The Court of Appeals has held that section 114 of the Public Service Law requires the Commission to determine, in the light of experience, whether a temporary rate has been too low, and to make it up in the final order if it has. (Matter of Consolidated Edison Co. v. Maltbie, 299 N. Y. 172; Matter of Bronx Gas & Elec. Co. v. Maltbie, 271 N. Y. 364.) The Commission argues that the temporary rates were not fixed under section 114. However, the only other sections for setting of temporary rates for telephone companies are contained in subdivision 2 of section 92 and subdivision 1 of section 97 of the Public Service Law and these sections do not authorize the fixing of temporary rates for a period longer than the maximum *490 period of suspension, a 10-month period. In this case the permanent rates were not fixed by the Commission until July 1 and September 1,1970 beyond the 10-month period of suspension and therefore section 114 must apply.
Even disregarding what I consider to be the statutory duty pursuant to section 114, it would appear as a practical matter that when shown the rate of return from the actual experience that the Commission would have chosen to reopen the hearings or grant a rehearing to bring the actual experience into consideration. The Commission fails to 'sufficiently explain this decision and does not effectively refute the 5.89% actual rate of return under the interim rates between March-August, 1970. It chooses, however, to rest its case principally upon the argument that the plaintiff has a complete and adequate remedy at law, referring to the choice the company had to make a new rate filing or the review afforded in an article 78 proceeding for obtainment of full relief. Both of these remedies clearly appear to be inadequate. There had already been considerable delay beyond the 10-month suspension period before the Commission had made a final order and had the Company taken the invitation of the Commission to make a new rate filing, further delays would be encountered and there was no indication that the temporary rate would be adjusted to make up the difference in experience and projections.
By the time the final decision of the Commission was issued diversity of opinion existed to the extent that one of the Commissioners dissented, and subsequently the opinion on the petition for rehearing found two Commissioners dissenting from the majority opinion. Some language of the dissent is quite significant in light of the change of economic events, and relates directly to the reluctance of the Commission to reopen the matter: “This Commission is charged by statute with the responsibility for prescribing just and reasonable rates for the future. It has the duty under both the Federal and State Constitution to see to it that its action does not result in confiscation of a utility company’s property in violation of its constitutional rights or the denial of a fair hearing. Since the Commission has no authority to fix final rates retroactively to make up for past losses except possibly where it has fixed temporary rates which are found to have been too low (Bronx Gas & Electric v. Maltbie, 271 NY 364), the present decision, if enforced, would, I believe, result both in confiscating the Company’s property and denying it a fair hearing. I have no desire to act in a manner which I believe, from an examination of the record as it now stands, would result in a violation of *491 both company’s and other parties’ constitutional and statutory rights. For that reason, I cannot join in approving the Commission’s decision lowering existing rates, denying a rehearing and ordering refunds where it appears that rates in effect have failed to provide the return intended. It is no answer to a situation such as this to say, as the majority of the Commission does, that the existing rates must be lowered and the Company invited to file new and higher rates at some later date which would again be subject to suspension for ten months, during which period the Company would be accorded the privilege of continuing its operations under the alleged confiscatory rates.”
It would be virtually impossible for the Company to recoup the losses even if it prevailed ultimately in this action and the difference between the final rates fixed by the Septembr 1, 1970 order and the rates filed by the Company in March 1969 totals $4.4 million monthly. Without doubt this court considers such a loss of revenue to constitute irreparable injury.
Accordingly, the motion for preliminary injunction is granted and the stay heretofore granted is continued in effect. The article 78 proceeding must be transferred to the Appellate Division, and an order in accordance herewith may be submitted on notice.